CARMAN v. SCOTT.

1. LANDLORD AND TENANT—TRESPASS—EVIDENCE—LEASE.
   That plaintiff claimed he had a lease or arrangement with defendant similar to a previous written lease of another tenant, which, however, was not referred to in the negotiations with defendant or incorporated into their contract by relation, did not warrant the admission of his oral testimony concerning the previous lease, upon trial of a suit in trespass against the defendant for forcibly dispossessing plaintiff and damaging his personal property.

2. DAMAGES—STATUTES.
   Under a declaration counting on 3 Comp. Laws, § 11206, which authorizes treble damages for a forcible eviction, the plaintiff was not entitled to have trebled the damages awarded for injury to his household goods, or for the value of tools left on the premises, or for loss of profits, or as a punishment, and part of the damages so awarded were not even recoverable.

3. LANDLORD AND TENANT—FORCIBLE ENTRY AND DETAINER.
   The only damages which should have been trebled was the item of the verdict awarded for damage in moving plaintiff's household goods.

Error to Eaton; Smith, J. Submitted June 11, 1912. (Docket No. 75.) Decided October 1, 1912.

Trespass by Edwin O. Carman against Eugene Scott for forcible entry and eviction. Judgment for plaintiff. Defendant brings error. Reversed.

*Elmer N. Peters,* for appellant.

*Garry C. Fox* and *Frank A. Dean,* for appellee.

OSTRANDER, J. A jury returned a vervict in favor of the plaintiff for injury to his household goods, $30; for tools and household goods left on the place (farm), $10; for damages sustained in moving plaintiff's household goods, $15; for damages of plaintiff sustained by being deprived of the profits and benefits of his contract to occupy and enjoy the farm until the expiration of his lease, $175; for exemplary damages, $400—a total of $630. The court trebled the damages, and entered a judgment for plaintiff for $1,890 and costs. A motion to set aside the verdict and grant a new trial was denied. Plaintiff claimed to be in possession of premises by virtue of an oral lease of them; his term beginning November 10, 1908, and expiring in one year, with a privilege to remain longer. His action is based upon an alleged wanton eviction by defendant in June, 1909, accompanied by injuries to and conversion of personal property and cost and expenses to plaintiff such as are indicated in the verdict. His declaration counts upon 3 Comp. Laws, § 11206, which reads:

"If any person shall be ejected or put out of any lands or tenements in a forcible and unlawful manner, or being put out, be afterwards holden and kept out by force, or with strong hand, he shall be entitled to maintain an action

of trespass, and shall recover therein three times the amount of damages assessed by the jury or a justice of the peace in the cases provided by law."

It was contended by appellant that plaintiff was a servant of defendant, or a cropper, with no possessory rights. It does not appear that a peremptory instruction upon this point was asked for by appellant, whose requests to charge treat it as involving disputed facts. Whether plaintiff was a tenant, entitled to possession, was a question submitted to the jury; they being instructed that, if the arrangement testified to by plaintiff existed, plaintiff had the right to use, occupy, and enjoy the premises for one year from November 10, 1908. The reasons advanced for a new trial include the ones that the verdict is unsupported by evidence, and is against the weight of evidence, and that no proper evidence was produced sustaining the finding that at the time of the alleged trespass plaintiff was in possession of the land. In this court it is urged that the testimony conclusively shows that plaintiff was not a tenant, and was an employé of defendant, or, at most, a cropper. The point may be considered as a ground for reversal and new trial in view of the denial of the motion for a new trial and the errors assigned upon such refusal.

Defendant's brother, a bachelor and a man upwards of 50 years of age, had a life estate in the premises in question here. He lived upon them and had always lived there. The testimony tends to prove that he was not mentally bright, and that his brother, the defendant, managed his affairs. When the arrangement was made with plaintiff, the farm was leased to one Starks, whose right to possession had not then expired. The lease was in writing. Defendant testified, corroborating plaintiff in this regard, that the arrangement he made with plaintiff was oral, and related the terms and conditions thereof. Upon his cross-examination he was interrogated about the Starks lease, the lease not, however, being produced, and, upon objection being made, counsel for plaintiff stated

that testimony had been introduced to the effect that defendant stated to plaintiff, in making their arrangement, the terms of the Starks contract, and that plaintiff could have the place upon the same terms. The objections, which included the one that the written instrument was the best evidence, were overruled, and counsel was permitted to examine the defendant at considerable length as to the terms of the Starks lease. The issue had already and distinctly been made that plaintiff never had, and never bargained for, a lease or for any possession or joint possession of the premises, or any right to occupy them except during the continuance of amicable relations with defendant's brother, who lived with plaintiff and his wife. The trial judge certifies that the bill of exceptions contains all of the evidence given upon the trial.

To the time when the defendant was being cross-examined and when the colloquy referred to took place I find no testimony, and the brief refers to none, tending to prove that plaintiff was ever informed about the terms of the Starks contract, or that his rights were in any respect identical with those given to Starks thereby. The testimony to which we are referred was given by defendant as follows:

"I had an arrangement of this kind with Starks. He was to furnish half and my brother furnish half. The contract with Starks and the one with Carman were substantially the same, except I claim no time was fixed when he was to go out of possession, or into possession. I had had experience with one man, and didn't want another one. It is not true I told Carman in the presence of his wife he could have it for a year.

"*Q.* That he could have it a year anyway, and just as much longer as you and he could get along?

"*A.* No, sir; he could not have had it as long as six days if he hadn't made it pleasant for Will. I did not tell him so. Did not keep track of Carman's time when he went on the farm."

Later, plaintiff having been recalled for cross-examination by defendant's counsel, the subject was again referred to, plaintiff's counsel asking him:

"*Q.* As I understand it, Mr. Scott, while he was there, stated to you the contents of the Starks contract; that is, under the Starks contract Mr. Starks was to do so and so, and so and so, and you could have the same rights?

"*A.* That was the very first conversation Mr. Scott had with me.

"*Q.* Was that at the house?

"*A.* No; that was down there at Mr. Hooper's, and he told me he was letting it, and why he was letting it. I says: 'Mr. Scott, let's go up to the house. We will talk it over with my wife.'

"*Q.* Was it talked over there?

"*A.* Yes, sir.

"*Q.* Again?

"*A.* A bargain was made. There was no bargain at all made down there in the presence of Hooper. He was just simply telling me what he had and how he rented it. Mr. Starks was going away, and he wanted somebody else. * * *

"*Mr. Peters:* Now, if the court please, I move to strike out all of the cross-examination of Eugene Scott relative to the Starks contract and the arrangement of the Starks contract, for the reason that the proofs show here that the contract with plaintiff in this case was verbal. That he never saw this contract and knew nothing about it or relied upon it in any way, and therefore it could not have been a part of his contract or the terms of his contract, or that he had any rights that were in any wise fixed by the terms of this contract.

"*The Court:* I will deny the motion.

"*Mr. Peters:* Exception."

It is manifest that the motion to strike out should have been granted. It was not claimed that any of the terms of the Starks contract had been adopted by reference merely, and it was claimed that all of the terms of the contract with plaintiff were stated, and that the contract rested entirely in parol. We are not informed by inspection thereof what the Starks bargain was. Plaintiff never saw it. Yet it is evident that he was permitted, inferentially at any rate, to support his own testimony that he had a lease by this reference to another, written, agreement. It is doubtful if without this testimony the jury

would have found that plaintiff had any right of possession which continued for a period after amicable relations with defendant's brother had ceased, or if the court would have permitted a finding to that effect in plaintiff's favor to stand. However, we should not say upon this record, no peremptory instruction upon the subject having been requested, that it was error to submit the question upon other testimony to the jury.

We need to consider one other line of exceptions which raise the question of the damages recoverable in this form of action, assuming that plaintiff was a tenant, and not a cropper or servant of the owner. The declaration alleges a forcible entry and detainer of premises, and the accompanying conditions from which injuries resulted are specially set out, with the nature and extent of the injuries. It was held in *Shaw* v. *Hoffman*, 21 Mich. 151, that a tenant for years might recover against his landlord for a wrongful and forcible entry under circumstances specified in the statute. The case was again before the court in 25 Mich. 162, where it was held that such a declaration would not support a judgment upon the verdict for single damages as for a trespass at common law. See, further, 2 Stevens' Practice, § 310, and 2 Green's Practice (3d Ed.), § 1575; *Pelton* v. *O'Keefe*, 144 Mich. 425 (108 N. W. 403); *Osburn* v. *Lovell*, 36 Mich. 246. Plaintiff relies upon *McIntyre* v. *Murphy*, 153 Mich. 342 (116 N. W. 1003, 15 Am. & Eng. Ann. Cas. 802), a case which is not in point because in that case plaintiff having, as in the case at bar, counted on the statute (section 11206), and having concededly made no case within this section, was permitted to and did amend the declaration by striking out all reference to the statute. This left the action one for trespass at common law, and no question of trebling the damages found by the jury was involved. In the case at bar plaintiff claims to have made a case within the statute. Assuming that he did so, or may do so upon a new trial, it is evident that items of damage were returned which may not be trebled under this section of

the statute, as was distinctly held in *Shaw* v. *Hoffman*, 25 Mich. 162. It necessarily follows that the jury awarded damages for injuries which, under the statute, could not be recovered for at all. Indeed, accepting the verdict as it was returned, which we must do, there is no specific item thereof, excepting the one of $15 for damages sustained in moving plaintiff's household goods, which can be trebled. The statute counted upon and pleaded in this action must not be confused with other somewhat similar statutes involved in various decisions of this court to which appellee refers.

The judgment is reversed, and a new trial granted.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, STONE, and BIRD, JJ., concurred.