PEOPLE v. PAFFHOUSEN

1. TRIAL—CRIMINAL LAW—MISTRIAL—TESTIMONY—POLYGRAPH.
    The mere mentioning of the word "polygraph" during a criminal prosecution is not a ground for a mistrial.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 29 Am Jur 2d, Evidence § 831.
    Physiological or psychological truth and deception tests. 23 ALR2d 1306.
    Propriety and prejudicial effect of comment or evidence as to accused's willingness to take lie detector test. 95 ALR2d 819.
    Physical examination or exhibition of, or tests upon, a suspect or accused, as violating rights guaranteed by Federal Constitution. 96 L Ed 194.
[3, 4] 29 Am Jur 2d, Evidence §§ 425-427.
    Modern status of role governing admissibility of evidence obtained by unlawful search and seizure. 50 ALR2d 531.
[5-13] 44 Am Jur, Rape §§ 17-20, 80, 81.
[6] 29 Am Jur 2d, Evidence § 320 et seq.
[8] 44 Am Jur, Rape § 64 et seq.
[10-13] 29 Am Jur 2d, Evidence § 785 et seq.

2. TRIAL—CRIMINAL LAW—MISTRIAL—WITNESSES—POLYGRAPH.

> A statutory rape complainant's voluntary use of the word "polygraph" during her testimony was not a ground for granting defendant a mistrial where it was not established that complainant had submitted to a polygraph examination, the prosecution made no attempt to introduce the results of any such examination, and the trial judge, upon a defense objection, properly ruled that the subject not be pursued any further and it was not.

3. CRIMINAL LAW—EVIDENCE—ILLEGAL SEIZURE—MOTION TO SUP-PRESS—TIMELINESS.

> A motion to suppress illegally seized evidence must be made before trial when defendant knows that the evidence has been taken; he is responsible for communicating that knowledge to his attorney who then has the responsibility of moving to suppress the seized evidence before trial.

4. CRIMINAL LAW—EVIDENCE—ILLEGAL SEIZURE—MOTION TO SUP-PRESS—TIMELINESS.

> A motion to suppress a handbook of sexual terms and photographs depicting nude and semi-nude females, as well as aberrant sexual behavior, which defendant surrendered to the police, allegedly under duress, at the time of his arrest for statutory rape, was properly denied where made during trial, because defendant, knowing that the police had this evidence, should have communicated his knowledge to his attorney before trial.

5. RAPE — STATUTORY RAPE — EVIDENCE — ACTS OF FAMILIARITY — ADMISSIBILITY.

> Any acts of intimacy, familiarity, protestations of love, affection, and the general relations existing between a complainant and a defendant charged with statutory rape are admissible for the purpose of showing opportunity, disposition of the parties, and their intimate and general relationship, as tending to break down the self-respect and modesty of the complainant.

6. RAPE—STATUTORY RAPE—EVIDENCE—PRIOR SEXUAL OFFENSES—ADMISSIBILITY.

> Proof of specific acts of impropriety between a complainant and an accused are permitted in statutory rape cases for the purpose of showing opportunity, the parties' disposition, and their intimate relations tending to break down the complainant's self-respect and modesty.

7. Rape—Statutory Rape—Evidence—Prior Sexual Offenses—
Admissibility.

> Evidence of prior sexual offenses of a statutory rape defendant
> is not admissible when offered for the general purpose of
> showing the criminal character of the accused because of the
> potential prejudicial effect of that evidence on the jury.

8. Rape—Statutory Rape—Evidence—Prior Sexual Offenses—
Admission.

> A prosecutor in a statutory rape case has the burden not only
> of showing for what purpose he is introducing evidence of
> prior sexual offenses between complainant and defendant but
> also that his purpose is material and relevant to the case
> being tried.

9. Rape — Statutory Rape — Prior Sexual Offenses — Specific
Purpose — Jury Instructions.

> Once evidence of prior sexual offenses between complainant and
> defendant is introduced in a statutory rape case to show
> opportunity, disposition of the parties, and their intimate
> relations tending to break down self-respect, the trial court
> has a duty, regardless of whether defendant requests it, to
> instruct the jury immediately that evidence of those prior
> offenses is being admitted for the specific purpose announced
> by the prosecution and that the jury shall consider that evi-
> dence for that purpose alone.

10. Rape—Statutory Rape—Evidence—Foundation—Cautionary
Instructions—Prejudice.

> Admission into evidence at defendant's statutory rape trial of
> a handbook of sexual terms and photographs depicting nude
> and semi-nude females and aberrant sexual behavior, found in
> his possession when arrested, constituted prejudicial error where
> the prosecution failed to show for what purpose the book and
> photographs were being introduced and the trial court, after
> admitting the evidence, failed to give the jury any caution-
> ary instructions, since the potential prejudicial effect of that
> evidence on the jury necessitated a strict adherence to the
> procedural safeguards attending its admission.

11. Rape—Statutory Rape—Evidence—Photographs.

> Written or photographic evidence depicting, or relating to, sexual
> behavior, taken from defendant's possession when he is arrested
> for statutory rape, are admissible at his trial provided that
> the prosecution establishes that defendant showed such evi-
> dence to complainant at the time of, or shortly before,

the act complained of so as to assist defendant to arouse a
sexual desire within the complainant, to cause her to experience
sexual excitement, or to create an atmosphere for experiencing
such excitement, and that defendant displayed such materials to
complainant sufficiently near in point of time to the disputed
act of rape to be substantially a part of it.

12. Rape — Statutory Rape — Evidence — Witnesses — Rebut-
tal — Collateral Issue.

A prosecution witness's testimony that defendant had shown to
her two photographs relating to aberrant sexual behavior,
similar to those shown to complainant, at the same place
where defendant allegedly had shown similar photographs to
complainant, was improperly admitted, as were the two photo-
graphs, where there was nothing in the record to indicate
that the two photographs shown to that witness were ever
shown to the complainant since whether defendant showed
sexual pictures to anyone besides the complainant was col-
lateral to the rape issues and impeachment of a collateral
issue by extrinsic evidence is improper.

13. Rape—Statutory Rape—Evidence—Photographs—Prejudice.

When no legitimate purpose is served by placing sex photo-
graphs before a jury in a statutory rape case, it is reversible
error to do so.

Appeal from Kalamazoo, Raymond W. Fox, J.
Submitted Division 3 June 4, 1969, at Grand Rapids.
(Docket No. 5,791.) Decided December 3, 1969.
Rehearing denied February 3, 1970. Application for
leave to appeal filed February 21, 1970.

Marshall Paffhousen was convicted of statutory
rape. Defendant appeals. Reversed and remanded
for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Donald A. Burge,*
Prosecuting Attorney, and *H. Michael Dwan,* As-
sistant Prosecuting Attorney, for the people.

*Wickett, Erickson & Beach,* for defendant.

Before: J. H. GILLIS, P. J., and R. B. BURNS and V. J. BRENNAN, JJ.

V. J. BRENNAN, J. Defendant was convicted of the statutory rape of a 15-year-old girl. MCLA § 750.520 (Stat Ann 1954 Rev § 28.788).

On appeal, defendant raises four issues, only two of which require our consideration. It was established at trial that the complainant had changed her story about the incident to the policewoman assigned to the case. The prosecutor asked her why she had changed her story, and the question was repeated by the trial court. She replied, "Well, I thought I had better tell the truth for one thing, and, another thing, you don't fool a polygraph machine." Defense counsel objected and asked that the jury be excused.

Thereupon, the following colloquy took place:

"*The Court:* Now what is the objection?

"*Mr. Birkhold (defense counsel):* My objection is that to me it is obvious that counsel was trying to get the polygraph in his testimony.

"*The Court:* No, nothing indicates that.

"*Mr. Birkhold:* Because he kept asking why she changed her mind, and it is obvious he was working up to get that in, and I ask for a mistrial.

"*The Court:* No, he hasn't asked for that. I don't know that she has taken a polygraph test. She just decided she would tell the truth before she did. That is her answer.

\*          \*          \*

"*The Court:* I don't see anything wrong—if you go much farther you are going to be in trouble—but I don't see anything wrong up until now. You asked the young lady why she changed her story.

"*Mr. Birkhold:* And I have objected to it.

"*The Court:* And she said, 'I changed my story because you don't fool a polygraph test.' We know

a lot of people confess before ever being put on that machine.

"*Mr. Birkhold:* But his whole tenor of questioning is that this is the thing he was trying to bring out.

"*The Court:* I think the prosecutor had a right to ask her why she said something different the second time than she did the first. Now all she has said is that she decided she had better tell the truth and you don't fool a polygraph. Maybe you can fool a polygraph, but the question is whether she thought you could. So, at this point I see no error."

Defendant contends that the trial court erred in denying his motion for a mistrial. To so hold would be tantamount to requiring a mistrial every time the word "polygraph" is mentioned in a criminal prosecution. It was not established that the complainant had submitted to a polygraph examination nor was an attempt made to introduce the results of any such examination. The word "polygraph" was not used by counsel, but was volunteered by the witness. It was properly objected to, and the trial court properly ruled that the subject not be pursued any further. It was not, in fact, pursued, and no prejudicial error resulted. Compare the situation here with that in *People* v. *Brocato* (1969), 17 Mich App 277.

On direct examination of the complainant, the prosecutor inquired about a book and certain photographs which defendant had surrendered to the police, allegedly under duress, at the time of his arrest. The complainant testified that defendant had shown them to her at various times before the time of the alleged offense. When these items were offered into evidence, defense counsel moved to suppress them as evidence on the ground that they were illegally seized. He also objected to their admission as evidence on the ground that they were incompetent,

irrelevant and immaterial. The trial court denied the motion to suppress, stating,

"We cannot now interrupt the trial of the case—the defendant obviously, from his statement, knew that the pictures and book had been taken—so, we can't interrupt the trial for that purpose."

Under the circumstances, the denial of the motion to suppress was proper. *People* v. *Ferguson* (1965), 376 Mich 90; *People* v. *Harper* (1966), 3 Mich App 316; *People* v. *Bradley* (1966), 4 Mich App 660.

"A defendant with knowledge of facts constituting an alleged search and seizure before trial has the responsibility of communicating same to his attorney who then has the responsibility of moving to suppress in advance of trial." *People* v. *Wilson* (1967), 8 Mich App 651, 658.

As for defendant's objection on the ground of incompetency, irrelevancy and immateriality, the trial court concluded:

"[I]n my opinion any acts of intimacy, familiarity, protestations of love, affections, general relations between the parties are always admissible in the prosecution for adultery [*sic*]. Adultery is not the type of thing that people generally and widely encounter. And such proof is admissible, in my opinion, particularly in a case of a 15-year-old girl to show opportunity, disposition of the parties, intimate relations, their general relations, things that were done which tend to break down the self-respect and modesty of a 15-year-old. For that reason, I have thus far overruled the objection and I will continue to."

The book and the photographs were thereupon admitted as evidence. The book is an alphabetically arranged handbook of sexual terms. Of the 15 photographs allegedly shown the complainant, 7 are

snapshots of young women posing alone in the nude or semi-nude. The remaining 8 photographs need be described only as vividly depicting aberrant sexual behavior.

The ruling of the trial court appears to be based on the holding in *People* v. *Donald D. Williams* (1965), 2 Mich App 91, 94:

"It has long been the rule in Michigan that the evidence of the commission of another offense by the defendant cannot be admitted for the purpose of showing that the defendant was more likely to have committed the offense for which he is on trial, nor as corroborating the testimony relating to the commission of such principal offense. But in cases involving statutory rape, a qualified exception to the general rule permits proof of specific acts of impropriety between the prosecutrix and the accused for the purpose of showing opportunity, disposition of the parties, and intimate relations tending to break down self-respect and modesty."

The above-stated exception was explained in *People* v. *Askar* (1967), 8 Mich App 95, 101:

"Briefly stated, this exception permits the introduction of evidence of prior offenses, identical with the one charged, between the defendant and the person with whom he is alleged to have committed the act for which he is being tried. See *People* v. *Swift* (1912), 172 Mich 473; *People* v. *Donald D. Williams* (1965), 2 Mich App 91. With regard to sexual offenses, the general rule of exclusion is 'based upon the obvious potential prejudicial effect of such evidence, and the courts have frequently pointed out that such evidence is not admissible merely to show the criminal character of the accused.' Annotation, Admissibility in prosecution for sexual offense, of evidence of other similar offenses, 77 ALR2d 841 at pages 846, 847. Because of this potential prejudice to the accused the exception has been strictly

construed and evidence of prior offenses is admissible only for certain purposes, *i.e.,* to show *'opportunity, disposition of the parties, and intimate relations tending to break down self-respect.'* People v. *Donald D. Williams, supra,* at page 94. The burden is upon the prosecutor to show for which of these purposes he seeks to introduce evidence of prior offenses and to show that the purpose is material and relevant to the case being tried. Moreover, once the requisite showing has been made and the evidence admitted, we perceive it to be incumbent upon the trial court, whether or not so requested by the defendant, to instruct the jury immediately that the evidence was admitted for a specific purpose and that they shall consider it only for that purpose." (Emphasis supplied.)

In the present case, there was no showing by the prosecutor of a proper ground for admitting the book and the photographs; nor were any cautionary instructions given. While they may have been admissible to show "opportunity, disposition of the parties, and intimate relations tending to break down self-respect," their potential prejudicial effect on the jury necessitated strict adherence to the procedural safeguards attendant to the admission of such evidence. Since such safeguards were not present, the introduction of the book and photographs constituted prejudicial error. *People* v. *Askar, supra.*

In order for photographs of this nature to be admissible, it should be established that the evidence was shown to complainant at the time of, or shortly before, the act complained of so as to assist the defendant to arouse a sexual desire within complainant, cause her to experience sexual excitement, or create the atmosphere for the same. It must be shown that the showing of these photographs and book was "sufficiently near in point of time to the

disputed act to be substantially a part of it." *State
v. Graves,* (Me, 1966), 224 A2d 57, 62.

Here, the alleged showing occurred some days be-
fore the act complained of. The showing not being
an integral part thereof renders these exhibits in-
admissible.

In addition to the book and photographs allegedly
shown the complainant, two other photographs were
introduced into evidence. When defendant took
the stand in his own behalf, he denied having any
such pictures at the model home where he allegedly
had shown them to the complainant. Thereafter, a
young girl was called by the prosecution as a rebut-
tal witness. She testified that defendant had shown
her photographs similar to those shown the com-
plainant on a certain occasion when they were alone
in the model home. Defense counsel objected to the
testimony and to the admission of the additional
photographs as evidence, again on the grounds that
they were incompetent, irrelevant and immaterial.
The trial court reasoned that the evidence was prop-
er to rebut defendant's testimony and the objections
were overruled. One of the photographs admitted
is a close-up of what appears to be a woman engaged
in act of bestiality.

There is nothing in the record to indicate that the
photographs shown to the witness were ever shown
to the complainant. Whether defendant showed
pictures to anyone else is collateral to the issues
in this case and impeachment on a collateral issue
by extrinsic evidence is improper. McCormick,
Handbook of the Law of Evidence, (1954), pp 66,
1011. Since no legitimate purpose was to be served,
it was reversible error to place before the jury
photographs of such a highly prejudicial nature.
*Cf. People v. Turner* (1969), 17 Mich App 123.

Reversed and remanded for a new trial.

All concurred.