## PEOPLE v SCOTTS

1. CONSPIRACY—EVIDENCE—HEARSAY—STATEMENTS OF CO-CONSPIRA-
   TOR.

   Statements of a conspirator offered as evidence against a co-
   conspirator are hearsay and are not properly admissible unless
   made before the conspiracy has ended; however, where a state-
   ment was made while the conspiracy continued it is admissible
   because the agency relationship applies to each conspirator
   with regard to declarations and admissions of other co-conspira-
   tors.

2. CONSPIRACY—EVIDENCE—STATEMENTS OF CO-CONSPIRATOR.

   A conspiracy must be established independently of and prior to
   admission into evidence of statements of a co-conspirator.

3. CONSPIRACY—EVIDENCE—CIRCUMSTANTIAL EVIDENCE.

   A prima facie case of conspiracy can be established by circum-
   stantial evidence.

4. APPEAL AND ERROR—EVIDENCE—IMPROPER ADMISSION—OBJEC-
   TIONS—MISCARRIAGE OF JUSTICE.

   The improper admission of testimony does not require reversal
   where there was no objection to the testimony and where its
   admission did not constitute a miscarriage of justice.

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur 2d, Conspiracy §§ 38–40, 61.
[2] 16 Am Jur 2d, Conspiracy §§ 38, 61.
[3] 16 Am Jur 2d, Conspiracy § 36.
[4] 29 Am Jur 2d, Evidence § 494.
[5] 16 Am Jur 2d, Conspiracy § 41.
   21 Am Jur 2d, Criminal Law §§ 335, 336.
[6] 30 Am Jur 2d, Evidence § 1080.
[7] 30 Am Jur 2d, Evidence §§ 1140–1142.
[8] 40 Am Jur 2d, Homicide §§ 438, 439.
[9] 29 Am Jur 2d, Evidence § 296.
   75 Am Jur 2d, Trial § 747.
[10] 75 Am Jur 2d, Trial § 876.
[11] 46 Am Jur 2d, Judges § 86.
[12] 16 Am Jur 2d, Conspiracy § 31.

5. CONSPIRACY—STATEMENTS OF CO-CONSPIRATOR—RIGHT OF CON-
   FRONTATION.

A defendant in a conspiracy case is not denied his right of
confrontation of witnesses by the admission into evidence of a
statement of a co-conspirator who did not testify at trial where
the statement is attributable to the defendant because of the
agency relationship arising out of the conspiracy and where the
statement was spontaneous and against the co-conspirator's
penal interest.

6. WITNESSES—EVIDENCE—CREDIBILITY OF WITNESSES—APPEAL AND
   ERROR.

The credibility of witnesses is a matter of weight, not sufficiency,
of evidence, and determinations of credibility are made by the
jury; the Court of Appeals will not substitute its judgment for
that of the jury on this issue.

7. CRIMINAL LAW—EVIDENCE—EXTRA-JUDICIAL CONFESSION—CORPUS
   DELICTI.

An extra-judicial confession of a criminal defendant or a co-
participant may not be admitted into evidence until the corpus
delicti has been established.

8. HOMICIDE—MURDER—EVIDENCE—PREMEDITATION—DELIBERATION.

Evidence sufficient to sustain a finding of premeditation and
deliberation in a murder case falls into three categories: (1)
evidence which shows that a defendant had been engaged in
planning the killing, (2) evidence establishing a motive for the
killing, and (3) evidence that the nature of the killing was such
that the defendant must have intentionally killed according to
a preconceived design to take the victim's life in a particular
way.

9. CRIMINAL LAW—EVIDENCE—POLYGRAPH EXAMINATIONS.

A reference to a polygraph examination made by a prosecutor
during his examination of a witness does not require reversal of
a defendant's conviction where it was not established that the
witness took a polygraph test, no test results were introduced,
there was no intent to bolster the witness's credibility by use of
test results, the reference was promptly objected to, and the
trial court gave the jury a proper cautionary instruction.

10. HOMICIDE—MURDER—FIRST-DEGREE MURDER—LESSER INCLUDED
    OFFENSES—INSTRUCTIONS TO JURY.

A trial court in a prosecution for first-degree murder did not err
by failing *sua sponte* to give an instruction on the lesser

included offense of second-degree murder where the trial was held prior to a decision of the Supreme Court requiring that such an instruction be given and where defense counsel explicitly requested that no instructions on lesser included offenses be given.

11. JUDGES—DISQUALIFICATION OF JUDGES—EMPLOYMENT AS COUNSEL —SUBJECT MATTER.

A judge is not disqualified from hearing a case even though he has been employed as counsel by one of the parties where the subject matter of his employment was unrelated to the subject matter being tried before him (GCR 1963, 405.1).

12. CONSPIRACY—CRIMINAL LAW—SUBSTANTIVE OFFENSES—DOUBLE JEOPARDY.

The crime of conspiracy is distinct from the substantive offense; therefore, a defendant who was tried and convicted in one trial for both first-degree murder and conspiracy to commit first-degree murder where both crimes, although distinct, were committed in the same transaction was not subjected to double jeopardy.

Appeal from Recorder's Court of Detroit, Samuel C. Gardner, J. Submitted June 6, 1977, at Detroit. (Docket No. 25935.) Decided December 5, 1977.

Manuel L. Scotts was convicted of first-degree murder and conspiracy to commit first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Research, Training & Appeals, and *David J. Esper,* Assistant Prosecuting Attorney, for the people.

*Elliard, Crenshaw & Strong,* for defendant on appeal.

Before: J. H. GILLIS, P. J., and BRONSON and R. E. ROBINSON,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

R. E. ROBINSON, J. Defendant was charged jointly with Louis Edward Williams with first-degree murder and conspiracy to commit first-degree murder contrary to MCLA 750.316; MSA 28.548 and MCLA 750.157a; MSA 28.354(1) in the August 5, 1971, killing of Samuel Royal in Detroit, Michigan. Following trial which commenced on June 5, 1975, a Detroit Recorder's Court jury found both defendants guilty as charged on each count on June 12, 1975. On the same date, both defendants were sentenced to a term of life imprisonment on each charge. Defendant Scotts now appeals those convictions and sentences, raising several issues for our consideration. The pertinent facts follow.

Mrs. Royal, the victim's wife, was granted immunity and testified that she was referred to defendant Williams regarding a divorce because of marital difficulties. Although she was led to believe that Williams was an attorney, the record does not support that conclusion. Mrs. Royal testified that Williams suggested that she have her husband killed instead of divorcing him, and she ultimately agreed. She further stated that defendant Scotts was present at two of the three meetings at which the murder was discussed, and that she had delivered a key to her house to Williams at the second meeting. In addition, Mrs. Royal testified that Williams had referred to defendant as his partner.

James Hendricks, a friend of both Williams and defendant, testified that he lived near the victim and that both defendant and Williams came to his house on the evening of August 5, 1971. At that time defendant was wearing a handgun. Williams said that he and defendant were "going to take care of some business * * * around the corner", and left. The two men returned half an hour later;

defendant drove away, but Williams went into Hendricks' house and related the details of the murder, implicating defendant as the one who pulled the trigger.

Hendricks also testified that defendant had given the same details of the murder as Williams while a guest at Hendricks' house for a barbeque about a month after the crime occurred. At that time, however, defendant added that $30,000 or $35,000 was involved.

Previous testimony established that the victim was found lying prone on the kitchen floor with his hands bound behind his back and a telephone cord, with the telephone attached, wrapped around his neck. He had been shot in the back of the head. The medical examiner testified that the cause of death was a gunshot wound and that the wound was a "contact" wound, *i.e.,* the muzzle of the gun was pressed against the victim's head when the shot was fired.

Defendant first argues that the evidence of conspiracy was insufficient; he asserts that Hendricks' testimony concerning Williams' statement inculpating defendant was erroneously admitted because the statement was made after the conspiracy had ended. It is true that statements of a conspirator are hearsay and not properly admissible against a co-conspirator unless made before the conspiracy has ended. *People v Nankervis,* 330 Mich 17, 21; 46 NW2d 592 (1951).

"The rationale is that the agency relation charges each conspirator with declarations and admissions of other co-conspirators." *People v Stewart,* 397 Mich 1, 9; 242 NW2d 760 (1976).

The conspiracy involved here, however, was one to kill Mr. Royal and collect his life insurance

proceeds. Thus, even if defendant did not participate in the collection process, the conspiracy itself, *i.e.,* the agency relationship, was still continuing when Williams told Hendricks of the murder. In *People v Ryckman,* 307 Mich 631, 642; 12 NW2d 487 (1943), the Michigan Supreme Court quoted the following language now found at 15A CJS, Conspiracy, § 40, pp 739–740:

> "Conspiracy implies concert of design and not participation in every detail of execution, and it is not necessary that each conspirator should have taken part in every act, or know the exact part performed or to be performed by the others in the furtherance of the conspiracy."

Consequently, the hearsay rule did not bar admission of Williams' statement because it was attributable to defendant.

With respect to that statement, defendant also argues that it was not properly admitted because the conspiracy was not first established by other evidence. Although a conspiracy must be established independently of and prior to admission of statements of a co-conspirator, *Stewart, supra* at 9; *People v 68th District Judge,* 44 Mich App 553, 554; 205 NW2d 608 (1973), so that the agency relation can properly be relied on, a prima facie case of conspiracy can be established by circumstantial evidence. *Stewart, supra* at 6. Here, the evidence introduced before Hendricks testified to Williams' statement was sufficient to justify an inference of defendant's guilt of the conspiracy.

The conspiracy itself was established by Mrs. Royal's testimony that she agreed with Williams to kill her husband and collect the insurance proceeds, because the two elements of conspiracy were thereby proved: 1) an agreement 2) to do

what is unlawful. *People v Atley,* 392 Mich 298, 310; 220 NW2d 465 (1974). Likewise, proof of the victim's unnatural death was introduced earlier in the trial. Previous testimony established that defendant was present at two meetings at which the murder was discussed and that Mrs. Royal turned over her house key to Williams. Also, Hendricks had testified that defendant appeared, wearing a handgun, at Hendricks' home near the victim's home with Williams at the appointed time shortly before the murder occurred. This circumstantial evidence was sufficient to support the inference that defendant had joined in the conspiracy prior to introduction of Hendricks' testimony concerning Williams' statement. The latter statement was therefore properly admitted. *Stewart, supra* at 6–7.

Under this analysis, of course, Mrs. Royal's testimony that Williams told her that defendant was his partner was not properly admitted because defendant's participation in the conspiracy was not established until Hendricks testified that defendant appeared with Williams wearing a gun on the night of the murder. Defense counsel, however, failed to object to this testimony, and its admission did not constitute a miscarriage of justice requiring reversal. GCR 1963, 529.1; *People v Redfern,* 71 Mich App 452, 454; 248 NW2d 582 (1976). Since Hendricks' testimony was admissible, defendant's argument that the evidence was insufficient to support his conviction without that testimony is moot; all of the evidence taken together was sufficient to support defendant's conviction on the conspiracy charge.

Relying on *Bruton v United States,* 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968), defendant further argues that the admission of Williams' statement inculpating defendant denied him his

right of confrontation because Williams was a codefendant and did not testify. In *Bruton,* the Court found that the defendant's Sixth Amendment rights were violated where the trial court admitted extra-judicial statements of a nontestifying codefendant inculpating the defendant. In that case, however, the codefendant's statement was pure hearsay with respect to the defendant, and no hearsay exception applied. The Court explicitly recognized this state of facts and observed:

"There is not before us, therefore, any recognized exception to the hearsay rule insofar as petitioner is concerned and we intimate no view whatever that such exceptions necessarily raise questions under the Confrontation Clause." *Bruton, supra,* 391 US at 128, fn 3.

In the case at bar, there is an applicable hearsay exception. Because Williams was not only a codefendant but also a co-conspirator, his statements were attributable to defendant due to the agency relationship arising out of the conspiracy. Consequently, no hearsay problem was involved, and *Bruton, supra,* does not mandate the conclusion that defendant's right to confront witnesses was violated.

This reasoning was adopted by a majority of the United States Supreme Court in *Dutton v Evans,* 400 US 74; 91 S Ct 210; 27 L Ed 2d 213 (1970). The statement involved there was made after the conspiracy had ended, but the case arose in Georgia, and under that state's law, statements made even during the concealment stage of a conspiracy fall within the conspiracy exception to the hearsay rule. Federal courts, however, apply the same rule that Michigan uses in this respect.

Nevertheless, a majority of the Supreme Court

concluded that *Bruton* did not preclude admission of the statement because there was no hearsay exception involved in that case. It further held that admission of a conspirator's statement inculpating a co-conspirator does not violate the co-conspirator's right to confrontation where the statement was made spontaneously and was made against the declarant's penal interest. *Evans, supra,* 400 US at 86–89. Since the conspiracy exception to the hearsay rule applies to the case at bar and because Williams' statement was spontaneous and against his penal interest, defendant's right to confrontation was not violated.

Defendant also challenges the sufficiency of the evidence to convict him of murder, arguing that the only evidence was hearsay from witnesses whose credibility was questionable. As observed above, however, Williams' statement to Hendricks falls within the conspiracy exception to the hearsay rule. Furthermore, the credibility of witnesses is a matter of weight, not sufficiency. Determinations of credibility are made by the jury which heard the testimony and observed the witnesses, and this Court will not substitute its judgment on this issue. *People v Atkins,* 397 Mich 163, 172; 243 NW2d 292 (1976).

With respect to the sufficiency of the evidence of murder, defendant further argues that Hendricks' testimony of both Williams' and defendant's statements was improperly admitted because the corpus delicti of murder, specifically premeditation, was not previously established. The "corpus delicti" rule provides that the extra-judicial confession of a defendant or a co-participant may not be admitted until the corpus delicti has been established, *i.e.,* "the elements of the offense charged have been established and hence that someone

committed that offense". *People v Barron,* 381 Mich 421, 424; 163 NW2d 219 (1968).

In *People v Oster,* 67 Mich App 490, 497; 241 NW2d 260 (1976), this Court said:

"Premeditation can be inferred from various kinds of evidence, such as the prior relationships between the parties, whether the murder weapon had been acquired or positioned in preparation for the homicide, the immediate circumstances of the killing, and the defendant's post-homicide conduct. (Citations omitted.) We have noted in the past that evidence sufficient to sustain a finding of premeditation and deliberation falls into three basic categories: evidence which shows that the defendant had been engaged in planning the killing, evidence establishing a motive for the killing, and evidence that the nature of the killing was such that the defendant must have intentionally killed according to a preconceived design to take his victim's life in a particular way."

Defendant's argument that premeditation was not established before the admission of his and Williams' statements must be rejected. The testimony given earlier that the victim was shot in the back of the head while his hands were bound behind him creates an inference of an intentional killing according to a preconceived design. Moreover, previous testimony as to defendant's presence at two of the meetings between Mrs. Royal and Williams and his appearance at Hendricks' home at the appointed time shows that defendant was engaged in planning the killing. Thus, evidence sufficient to sustain a finding of premeditation under at least two of the three categories set out in *Oster, supra,* was presented before Hendricks testified to the disputed statements, and the statements were properly admitted.

Defendant also urges this Court to find error in

the prosecutor's reference to a polygraph examination while questioning Mrs. Royal on redirect examination. The following colloquy occurred:

"QUESTION: All right. Were you ever asked to take a polygraph test?
"ANSWER: Yes.
"QUESTION: Do you know who—do you recall who asked you to do that?
"MR. BERG [defense counsel]: Well, your Honor, wait a minute. I'm going to ask that the jury be excused for a second."

The court denied defendant's motion for a mistrial, but ruled that no further reference be made to the polygraph. The jury was returned to the courtroom, and the court cautioned them "to disregard any statements or comments about a polygraph test".

This Court has reversed convictions where the fact of taking a polygraph examination or its results were introduced to bolster a witness's credibility. *People v Rodgers,* 66 Mich App 658, 661–662; 239 NW2d 701 (1976), and cases cited therein; *People v Leroy Goodwin,* 40 Mich App 709, 716; 199 NW2d 552 (1972). On the other hand, where a reference to a polygraph examination has been made with no suggestion of the results obtained and where a cautionary instruction was given, it has been held that there was no manifest necessity for a mistrial. *People v Alvin Johnson,* 396 Mich 424, 438; 240 NW2d 729 (1976); *People v Maguire,* 38 Mich App 576, 581; 196 NW2d 880 (1972). In *Alvin Johnson, supra* at 435, the Supreme Court said:

"Particularly helpful is *People v Paffhousen,* 20 Mich App 346, 350; 174 NW2d 69 (1969), where the complain-

ing witness explained she had changed her story because 'you don't fool a polygraph machine'. The trial court denied counsel's motion for a mistrial.

" 'Defendant contends that the trial court erred in denying his motion for a mistrial. *To so hold would be tantamount to requiring a mistrial every time the word "polygraph" is mentioned in a criminal prosecution.* It was not established that the complainant had submitted to a polygraph examination nor was an attempt made to introduce the results of any such examination. The word "polygraph" was not used by counsel, but was volunteered by the witness. It was properly objected to, and the trial court properly ruled that the subject not be pursued any further. It was not, in fact, pursued, and no prejudicial error resulted.' 20 Mich App 351. (Emphasis added.)"

Although it was the prosecutor who used the word "polygraph" in the case at bar, it was not established that Mrs. Royal took a polygraph test, nor were any test results introduced. In fact the prosecutor explained that he was attempting to show that Mrs. Royal was asked to take a polygraph test but refused on Williams' advice. The prosecutor intended to demonstrate that Mrs. Royal's false statements to the police, which were brought out on cross-examination, were probably also made on Williams' advice. The reference to a polygraph test was promptly objected to, and the court properly ruled that no further reference be made to it. In addition, the court cautioned the jury to disregard the reference to a polygraph test.

The case at bar does not involve "a pattern of contumacious conduct on the part of the prosecutor". *Alvin Johnson, supra* at 437. Here neither polygraph test results nor the fact of taking such a test were introduced, nor was the intent behind the reference to the polygraph to bolster Mrs. Royal's credibility because she passed such a test.

The jury learned only that Mrs. Royal was asked to take a polygraph test; it was not even told who requested it. Any prejudice arising from that knowledge was cured by the court's cautionary instruction, and reversal is not required. *Alvin Johnson, supra* at 435, citing *People v Paul F Baker,* 7 Mich App 471, 476; 152 NW2d 43 (1967); *Maguire, supra* at 581.

Defendant raises several other arguments which must also be rejected. The trial court did not commit reversible error in failing to give *sua sponte* an instruction on the lesser included offense of second-degree murder. *People v Jenkins,* 395 Mich 440, 442–443; 236 NW2d 503 (1975), which requires that such an instruction be given in first-degree murder prosecutions after January 1, 1976, does not affect defendant's trial which was held in June, 1975. In addition, defense counsel's explicit request that no lesser included offense instructions be given bars reversal. *People v Thompson,* 69 Mich App 465, 468; 245 NW2d 93 (1976), *lv den* 398 Mich 806 (1976).

Likewise, the trial judge did not err in failing to disqualify himself. GCR 1963, 405.1 provides that a judge is disqualified if he "has been consulted or employed as counsel by a party pertaining to the subject matter to be litigated". Although Mrs. Royal testified that she had contacted the judge while he was an attorney, she consulted him about a divorce, not the subject matter of the instant case: murder and conspiracy committed by defendant. The drafter's comments to this court rule indicate that a judge may hear a case even though he has been employed as counsel by one of the parties in a matter unrelated to the subject matter being tried before him. 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 278.

Consequently, the trial court was not disqualified under GCR 1963, 405.1, from presiding over defendant's trial for murder and conspiracy simply because the prosecutor's witness had consulted the judge concerning her divorce. Moreover, defendant was tried before a jury and has shown no prejudice on the record. Therefore, the court did not err in failing to disqualify itself. *People v Tillman,* 59 Mich App 768, 770–771; 229 NW2d 922 (1975).

Finally, defendant asserts that he was subjected to double punishment and therefore double jeopardy by being prosecuted for both conspiracy to commit and the commission of first-degree murder. Although double jeopardy would have barred a second trial if the two counts had been prosecuted separately since defendant committed both crimes in pursuit of only one objective, *People v Robertson,* 67 Mich App 603, 606; 242 NW2d 24 (1976), conspiracy and murder are entirely separate crimes.

The conspiracy to commit first-degree murder charge requires that each of the conspirators have the intent required for murder; it also requires proof of a mutual understanding or agreement, *People v Hintz,* 69 Mich App 207, 217–218; 244 NW2d 414 (1976), but no overt acts need be established. *People v O'Connor,* 48 Mich App 524, 526; 210 NW2d 805 (1973). Murder, on the other hand, cannot be established without proof of the overt act of killing, *People v Fountain,* 71 Mich App 491, 499; 248 NW2d 589 (1976), but no agreement need be proved.

Thus, in *People v Tinskey,* 394 Mich 108, 109; 228 NW2d 782 (1975), the Michigan Supreme Court observed that "the crime of conspiracy is distinct from the substantive offense". Because the

crimes were distinct but were committed in the same transaction, no double jeopardy violation occurred here.

Affirmed.