# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KAJUAN LATROY BROWN,

        Defendant-Appellant.

UNPUBLISHED
June 27, 2017

No. 331309
Wayne Circuit Court
LC No. 15-001635-01-FC

Before: JANSEN, P.J., and MURPHY and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of two counts of armed robbery, MCL 750.529, a single count of safe stealing, MCL 750.531, and one count of possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to concurrent prison terms of 27 to 54 years for each robbery conviction and 15 to 30 years for the safe-stealing conviction, to be served consecutively to a five-year term of imprisonment for the felony-firearm conviction. We affirm.

Defendant was convicted of robbing the Quality Behavioral Health Center in Detroit and stealing the ATM from inside the facility on February 9, 2015. The prosecution presented evidence that defendant, a former patient at the drug and alcohol rehabilitation center, and his juvenile accomplice, Isiah Lemons, entered the facility, held two employees at gunpoint, and used a dolly to remove the ATM from the premises. The ATM had been placed in the facility one month before the robbery. The employees could not identify the perpetrators, whose faces were covered, but another man, Earl Canyon, whom defendant had approached about helping him rob the facility, contacted authorities and identified defendant as a suspect after seeing a television news broadcast about the robbery and learning that a reward was being offered. The defense argued that Canyon was not credible, and emphasized the testimony of Lemons, who minimized defendant's level of involvement in the crime and claimed that he alone was the person who was armed with a gun during the robbery and who had later opened the ATM and took the money. Lemons did testify that defendant participated in the crime by using the dolly to remove the ATM, hauling it to a waiting van.

-1-

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the evidence was insufficient to establish his guilt of felony-firearm. We review de novo the issue regarding whether there was sufficient evidence to sustain a conviction. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). In reviewing the sufficiency of the evidence, this Court must view the evidence – whether direct or circumstantial – in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). Circumstantial evidence and the reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of a crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). We resolve all conflicts in the evidence in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

"The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). In challenging this conviction, defendant does not dispute that sufficient evidence established that he participated in the commission of a felony, but argues only that the necessary element of possession of a firearm was not proven because the evidence failed to establish beyond a reasonable doubt that he, and not Lemons, was the person who possessed the firearm during the robbery. Possession is a question of fact for the jury. *People v Strickland*, 293 Mich App 393, 400; 810 NW2d 660 (2011). Circumstantial evidence and reasonable inferences arising from the evidence can establish possession. *Id.*

The center's intake worker, Thomas Murray, testified that the "young guy" first approached the center's secured entrance and feigned wanting to enter the rehabilitation program. Murray explained that as the "kid's standing there," Murray turned to make a phone call, leaving the door ajar, at which time a second man, who was stocky and shorter, came in and "said get on the floor." When the second man told Murray to get on the floor, Murray "turned around and seen a pistol, the revolver pointed at [him]." Murray later reiterated that when he turned and saw the gun pointed in his face, he had "seen the door open and boom the person was at it . . . [a]nd said get on the floor." Murray was then "marched" to the area where the ATM was located, where the group encountered employee Melvin Cole. According to Murray, once Cole opened the door, "Boom, he was on him *too*. Told us both to get on the floor." (Emphasis added.) Lemons, who was 15 years old on the date of the offense, testified at trial and admitted that he was the person who initially approached the worker, Murray, at the rehab center, and he also testified that defendant then joined him and participated in the removal of the ATM. Lemons claimed, however, that he, and not defendant, was the person who possessed the gun.

Viewed in a light most favorable to the prosecution, the evidence, and reasonable inferences arising from it, were sufficient to enable the jury to find beyond a reasonable doubt

that it was defendant who possessed the firearm during the robbery. Although Lemons claimed in his testimony that he was the person who possessed the gun, Murray testified that the first person who approached him was a "kid," and then a second man, who was shorter and stockier,[1] "busts in" and told him to "get on the floor," which is when Murray turned around and first saw a revolver pointed at him. A jury could reasonably infer from Murray's testimony that Lemons, a 15-year-old juvenile on the date of the offense, was the "kid" who initially approached Murray and acted as a distraction for defendant to gain entrance to the center with the firearm, and that defendant was the second person who appeared and ordered Murray to the floor while pointing a revolver at him. Murray's testimony, and defendant's physical stature, supported the conclusion that defendant was the stocky and shorter person who was armed with a firearm and sought to enforce the orders that only he was giving, particularly considering that Murray first saw the firearm when the second and shorter person ordered him to the ground. The evidence that defendant was the person seeking assistance to steal the ATM the day before the robbery, was the person familiar with the center and the presence of the ATM, and was the person giving the orders during the robbery, further supports a finding that defendant was the person who possessed the firearm during the robbery.[2]

Defendant emphasizes Lemon's trial testimony that he, and not defendant, possessed the firearm, and argues that it is just as conceivable that "there could have been two different people giving orders and holding the weapon"; he contends that the prosecution's suggestion that defendant was able to both hold the victims at gunpoint and handle the dolly is implausible.[3] In

---

[1] According to the presentence investigation report, defendant was born on October 27, 1978, and therefore would have been 36 years old on the date of the offense. In addition, the Basic Information Report, which accompanied the presentence report, lists defendant's height as 5' 6" and lists his weight as 200 pounds.

[2] Defendant's argument necessarily suggests that Lemons drew the weapon after Murray had momentarily turned around, with defendant – unarmed – then bursting through the door yelling at Murray to get on the floor. This alleged scenario, in our view, appears illogical. If Lemons had the gun the whole time, it would seem that he would have immediately drawn it on Murray after Murray first opened the door, and it would also seem that the person actually holding the firearm would be the person making the demand that Murray get on the floor. Ultimately, it was for the jury to resolve the matter upon assessment of credibility and the weight of the evidence, not us.

[3] We do note the following testimony by Murray:

> *Q*. And . . . you guys are sitting on the floor with the gun being pointed at you?
>
> *A*. Yeah, he's ["the stockier short guy"] behind me carrying through his dolly.

This testimony could reasonably be construed as indicating that the person handling the dolly, i.e., defendant, was also the person wielding the firearm.

making these arguments, however, defendant ignores the principles that when evaluating the sufficiency of evidence, this Court is required to resolve all conflicts in the evidence in favor of the prosecution, *Kanaan*, 278 Mich App at 619, and that the deferential standard of review is the same whether the evidence is direct or circumstantial, *Reese*, 491 Mich at 139; *Hardiman*, 466 Mich at 428. Defendant's challenges are related to the weight of the evidence and the credibility of Lemon's testimony, rather than the legal sufficiency of the evidence. *People v Scotts*, 80 Mich App 1, 9; 263 NW2d 272 (1977). Indeed, these same challenges were presented to the jury during trial. Again, this Court "will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). Sufficient evidence supported defendant's felony-firearm conviction.[4]

## II. SENTENCE

We also reject defendant's arguments that he is entitled to be resentenced because the trial court erroneously scored offense variables (OVs) 1, 2, 13, and 19 of the sentencing guidelines, and engaged in impermissible judicial fact-finding to score some of the variables.

### A. EVIDENTIARY CHALLENGES TO THE SCORING OF THE OFFENSE VARIABLES

To preserve a challenge to the scoring of the sentencing guidelines, the challenge must be raised at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in this Court. MCL 769.34(10); MCR 6.429(C); *People v Jones*, 297 Mich App 80, 83; 823 NW2d 312 (2012). Because defendant did not so challenge the scoring of OVs 1, 2, and 13, those claims are not preserved for appeal. We review unpreserved scoring challenges for plain error affecting defendant's substantial rights. *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004). Defendant preserved his evidentiary challenge to the scoring of OV 19 by objecting to the scoring of this variable at sentencing. When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

### 1. OV 1 AND OV 2

Defendant argues that the trial court erred in scoring OVs 1 and 2 because the evidence failed to show that he was the person who possessed a firearm during the robbery. OV 1 concerns "aggravated use of a weapon," MCL 777.31(1), and the trial court must score 15 points

---

[4] Defendant also asserts that there was insufficient evidence to support his felony-firearm conviction under an aiding or abetting theory. However, the prosecution did not request, and the trial court did not provide, an instruction on aiding or abetting felony-firearm. As already determined, sufficient evidence supported defendant's felony-firearm conviction as a direct principal.

if "[a] firearm was pointed at or toward a victim[,]" MCL 777.31(1)(c). OV 2 regards the "lethal potential of the weapon possessed or used," MCL 777.32(1), and five points must be scored if "[t]he offender possessed or used a pistol[,]" MCL 777.32(1)(d). As we concluded earlier, sufficient evidence of defendant's possession of a firearm was presented at trial to support defendant's felony-firearm conviction. And there was also adequate evidence that defendant pointed the gun at or toward Murray. Therefore, defendant's challenges to the trial court's scoring of OVs 1 and 2 are without merit.

### 2. OV 13

OV 13 concerns a "continuing pattern of criminal behavior." MCL 777.43(1). The trial court must score 25 points for OV 13 if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). Defendant maintains that he has only two, not three, qualifying offenses. However, all crimes within a five-year period, including the sentencing offense, must be counted, MCL 777.43(2)(a), and a pattern of criminal activity may be based on multiple offenses arising from the same event, see *People v Harmon*, 248 Mich App 522, 532; 640 NW2d 314 (2001). Defendant was convicted of two counts of armed robbery and one count of safe stealing, which are felonies, MCL 750.529 and MCL 750.531, and which constitute crimes against a person, MCL 777.16y. Accordingly, the trial court correctly assessed 25 points for OV 13.

### 3. OV 19

OV 19 addresses "interference with the administration of justice." MCL 777.49. The trial court must score 10 points if "[t]he offender . . . interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). In scoring OV 19, a court may consider the defendant's conduct after the completion of the sentencing offense. *People v Smith*, 488 Mich 193, 200; 793 NW2d 666 (2010). A defendant interferes with the administration of justice when he or she "hampers, hinders, or obstructs the process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 344; 844 NW2d 127 (2013). This Court has recognized that a defendant's conduct of engaging in threats or intimidation of a victim or witness, or instructing a victim or witness to not reveal or disclose a defendant's conduct, is sufficient to support a score of 10 points under OV 19. *Id.*

In this case, jail recordings of several of defendant's telephone conversations, which were admitted at trial, illustrated defendant's clear attempt to prevent Canyon, also known as "Red," from testifying against him. During a February 19th conversation with his father, defendant informed his father that "the only thing" against him was the person "telling on [him]." At defendant's direction, his father called a third party and defendant instructed his father to tell that person that "Lil Red" on Whittier is "telling on me." "Go down there before the 26th [the date of defendant's preliminary examination] and make that ni**a not come to court." The next day, during a conversation with his brother, defendant stated, "If that ni**a don't come to court on the 26th, I'm straight." He directed his brother to contact "Norman," so Norman could talk to people about Red. On February 25th, the day before his court date, defendant called his brother, who then had Norman join in on the phone conversation. Defendant told Norman that "bitch-ass" Red is "telling on me." "He can't come to court." Norman responded, "I'll stop that." In turn, defendant stated, "Stop that sh*t." Norman assured defendant, "I'll do that for you."

Seeking further assurance, defendant stated, "You gonna make that happen," to which Norman replied, "I got you." On February 27th, defendant again conversed with Norman, informing him that the "bitch-ass ni**a came to court." Norman, apparently surprised, responded that he "tried to stop that ni**a." Defendant then instructed Norman to tell Carlos and the others in their group what was going on with Red and that "Red ain't right." Additional exchanges occurred with Norman on March 4th, wherein defendant referred to Red as a "f**ked ni**a," inquired about Red's status and whereabouts, and asked what Carlos had done. Norman informed defendant that Carlos "didn't do nothing yet," that Red had "disappeared," and that Norman had "tried to stop him." During trial, Canyon testified that he knew defendant had sent people "at him" and that he was shot at "about nine times" before he testified at the preliminary examination.

Given defendant's conduct, a preponderance of the evidence easily supported a determination that he interfered with the administration of justice. Indeed, "the acts of witness intimidation . . . [sought] to prevent incriminating evidence from being used throughout the process of administering judgment of [defendant] by judicial process, including during the pretrial and, potentially, trial stages." *Hershey*, 303 Mich App at 344. The fact that there was no evidence that Norman actually spoke to Canyon, or that defendant's attempts to thwart Canyon's testimony failed, does not negate the conclusion that defendant's acts were done for the purpose of hindering or obstructing the administration of justice. Accordingly, the trial court did not err in assessing 10 points for OV 19.

B. CONSTITUTIONAL CHALLENGE TO OV 13 AND OV 19 UNDER *LOCKRIDGE*

Lastly, defendant argues that the trial court engaged in impermissible judicial fact-finding when it assessed 25 points and 10 points, respectively, for OVs 13 and 19. To preserve a claim that judicial fact-finding resulted in a mandatory increase in a defendant's sentencing guidelines range in violation of the defendant's constitutional rights, the defendant must object on that basis at the time of sentencing. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). Because defendant did not so challenge the scoring of OVs 13 and 19, defendant's constitutional challenge is unpreserved. We review unpreserved *Lockridge* challenges for plain error affecting substantial rights. *Id.* Preliminarily, based on our earlier discussion of OV 13 (pattern of felonious criminal activity), the facts underlying the 25-point score for OV 13 were encompassed by the jury's verdict. Although we agree that the facts underlying the 10-point score for OV 19 were not encompassed by the jury's verdict or an admission by defendant, defendant is not entitled to any relief.

In *Lockridge*, 498 Mich at 364, our Supreme Court held that Michigan's sentencing guidelines are constitutionally deficient, in violation of the Sixth Amendment, to the extent that they "*require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range . . . ." To remedy this deficiency, the Court held that the guidelines are advisory only. *Id.* at 365. Under *Lockridge*, however, trial courts are still required to "continue to consult the applicable guidelines range and take it into account when imposing a sentence" and are permitted to score the OVs using judicially-found facts. *Id.* at 392, 392 n 28. As this Court explained in *People v Biddles*, 316 Mich App 148, 158; ___ NW2d ___ (2016),

[t]he constitutional evil addressed by the *Lockridge* Court was not judicial fact-finding in and of itself, it was judicial fact-finding in conjunction with *required* application of those found facts for purposes of increasing a *mandatory* minimum sentence range[,] [which] *Lockridge* remedied . . . by making the guidelines *advisory*, not by eliminating judicial fact-finding.

Thus, a defendant sentenced after the *Lockridge* decision is not entitled to resentencing if the trial court engaged in judicial fact-finding to score the OVs. In this case, defendant was sentenced five months after *Lockridge* was decided. The trial court is presumed to have been aware of *Lockridge* when it imposed sentence. See *People v Alexander*, 234 Mich App 665, 675; 599 NW2d 749 (1999). Although the trial court did not explicitly express its understanding that the sentencing guidelines were advisory, defense counsel had referred to the advisory nature of the guidelines before the court imposed sentence, and there is nothing to suggest that the trial court failed to recognize that the guidelines were advisory or that the court sentenced defendant in a manner inconsistent with *Lockridge*. Because the guidelines were advisory, the judicial fact-finding used to score OV 19 did not violate the Sixth Amendment by mandatorily compelling the trial court to impose a specific sentence. Instead, the trial court scored the OVs and used those guidelines as an advisory range, thereby conforming to the holding of *Lockridge*. Therefore, defendant has not demonstrated impairment of his Sixth Amendment rights. *Lockridge*, 498 Mich at 395. Accordingly, defendant is not entitled to be resentenced.[5]

 Affirmed.


        /s/ Kathleen Jansen
        /s/ William B. Murphy
        /s/ Stephen L. Borrello

---

[5] Defendant presents a cursory claim that his sentence is disproportionate because the trial court failed to consider his "mental illness" as a mitigating factor. Defendant provides little argument and no legal support for this cursory complaint. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Moreover, the issue of defendant's alleged mental illness was raised at sentencing. We note that he was deemed competent to stand trial following a competency examination. Defendant's sentence was within the guidelines range. "A sentence within the guidelines range is presumptively proportionate, and a proportionate sentence is not cruel or unusual." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013). A defendant can only overcome the presumption by presenting unusual circumstances that would render a presumptively proportionate sentence disproportionate. *Id.* Here, defendant has not presented us with unusual circumstances such that we can find his sentence disproportionate. Resentencing is unwarranted.