# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 19, 2017

Plaintiff-Appellee,

v

No. 329186
Wayne Circuit Court
LC No. 15-002799-01-FC

BRANDON JAMAR LOFLAND,

Defendant-Appellant.

Before: RIORDAN, P.J., and FORT HOOD and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree felony murder, MCL 750.316(1)(b); two counts of carjacking, MCL 750.529a; felon in possession of a firearm, MCL 750.224f; and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to life imprisonment for the murder conviction, and concurrent prison terms of 25 to 30 years each for the carjacking convictions, and three to five years for the felon-in-possession conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. We affirm.

Defendant's convictions arise from a crime spree in Detroit on the night of September 13, 2014, during which he first carjacked Kevin Foy and took the vehicle Foy was sitting in, a 2014 red Dodge Charger, and then later attempted to carjack Quinton Brown, who was driving a Cadillac Escalade. Brown was shot during the offense and later died from his injury. The prosecutor's theory at trial was that between 9:00 and 9:45 p.m., Foy was sitting in the passenger seat of the running Charger when defendant ordered him out of the vehicle at gunpoint, and then drove away in the car. The Charger, which had a pushbutton starter, could be driven without the key fob if it was already running, but it could not be restarted once it was stopped. The prosecution presented video evidence from a gas station showing the stolen Charger pull up to a gas pump after 10:00 p.m., and the driver ultimately abandoning the vehicle when he could not restart it after purchasing gas. Defendant's former girlfriend, Nivra Bracey, identified defendant as the driver in still photographs obtained from the video. The video showed defendant walking away from the gas station in the direction of where Brown was later found. The prosecution theorized that defendant walked from the gas station in search of another vehicle, encountered Brown sitting in his Cadillac, and then shot Brown, planning to take his vehicle. Brown, who was armed, managed to shoot defendant. At approximately 11:00 p.m., defendant called Bracey,

-1-

informed her that he had been shot in the neck, and asked her to call 911; defendant informed Bracey of his location, but then later gave her a different location. Ultimately, at 11:18 p.m., police officers responded to a gas station half a mile away from where Brown had been shot, and found defendant with gunshot wounds to his throat and cheek. The defense theory at trial was misidentification.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence was insufficient to identify him as the person who committed any of the charged crimes. We disagree. When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). Circumstantial evidence and reasonable inferences arising from the evidence can constitute satisfactory proof of the elements of the crime. *People v Brantley*, 296 Mich App 546, 550; 823 NW2d 290 (2012). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Identity is an essential element in a criminal prosecution, *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976), and the prosecution must prove the identity of the defendant as the perpetrator of a charged offense beyond a reasonable doubt. *People v Kern*, 6 Mich App 406, 409-410; 149 NW2d 216 (1967). Positive identification by a witness or circumstantial evidence and reasonable inferences arising from it may be sufficient to support a conviction of a crime. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000); *Nowack*, 462 Mich at 400. The credibility of identification testimony is for the trier of fact to resolve and this Court will not resolve it anew. *Id.*

Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable the jury to find that the driver of the red Charger that was abandoned at the gas station was the same person who carjacked Foy of that same vehicle at a nearby location a short while earlier. In light of the description of the pushbutton starting mechanism for the Charger, the jury could find that the person who took the vehicle was able to drive away without the key fob and drove the vehicle to the nearby gas station, but was unable to restart the vehicle without the key fob after stopping to purchase gas. Therefore, the person decided to abandon the vehicle. The driver of the Charger was captured in a still photograph from the gas station's surveillance video, and defendant's former girlfriend identified that person as defendant. In addition, the police later confiscated a black jacket and a gray hooded sweatshirt from defendant, which matched the description of the clothing worn by the person who carjacked Foy. This circumstantial evidence was sufficient to permit a rational trier of fact to reasonably infer beyond a reasonable doubt that defendant was the person who carjacked Foy, stealing the red Charger.

Sufficient evidence also supported defendant's identity as the person who shot and carjacked Brown. Brown's vehicle was approximately 50 feet from where defendant had abandoned the Charger. Given the evidence identifying defendant as the person who abandoned the Charger at the gas station, the jury could find that defendant walked down the street in the direction of Brown, in search of another vehicle. Brown told the police that a man wearing a

black jacket approached him as he sat in the driver's seat of his Cadillac, and the man fired a gun through the driver's side window, shooting Brown. Brown was armed with a .38 caliber Derringer and managed to shoot his assailant. Approximately 20 minutes after receiving a dispatch about Brown's shooting, the police encountered defendant, who had a gunshot wound, at a location half a mile from where Brown had been shot. Despite having being shot, defendant did not call 911 for assistance, but instead called his former girlfriend and asked her to call 911. The bullet fragment removed from defendant was consistent with the caliber of bullet that would have been fired from Brown's .38 caliber Derringer. This evidence, viewed in a light most favorable to the prosecution, was sufficient to permit a rational trier of fact to reasonably infer that defendant was the assailant who shot Brown while attempting to steal his Cadillac, and then, after having been shot by Brown during the offense, attempted to distance himself from Brown's location.

Defendant argues that there were discrepancies in the evidence concerning the color of the perpetrator's pants and how many times he was shot, and that there was no eyewitness testimony, or DNA or fingerprint evidence linking him to the crimes.[1] In making these arguments, however, defendant ignores that when evaluating the sufficiency of evidence, this Court is required to resolve all conflicts in the evidence in favor of the prosecution, *People v Lockett*, 295 Mich App 165, 180; 814 NW2d 295 (2012), and that this deferential standard of review is the same whether the evidence is direct or circumstantial. *Nowack*, 462 Mich at 400. Defendant's challenges are related to the weight of the evidence rather than its sufficiency. *People v Scotts*, 80 Mich App 1, 9; 263 NW2d 272 (1977). Indeed, these same challenges were presented to the jury during trial. This Court will not interfere with the jury's role of determining issues of weight and credibility. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).

---

[1] Defendant highlights that he was wearing light blue jeans, contrary to Brown's statement that his perpetrator was wearing khaki pants and Foy's statement that his perpetrator was wearing dark pants. Defendant ignores that his former girlfriend identified him as the person at the gas station in possession of the Charger. He also ignores that both Brown and Foy described him as wearing a black jacket, that Foy described him as wearing a gray hoodie under the jacket, and that, when he was found, he was wearing a grey sweatshirt and a black jacket. That defendant was wearing light jeans, and not khaki pants, did not preclude the jury from identifying him as the perpetrator in light of the other circumstantial evidence linking him to the crimes. Foy, unlike Brown, was able to testify at trial, and explained that it was dark, that he really did not see the carjacker's pants because he could only see the carjacker's upper body at the window, and his main focus was on the gun. Defendant also emphasizes that he sustained two gunshot wounds (to his cheek and throat), but Brown fired only one shot. However, the jury could find from the evidence that defendant's wounds were caused by one gunshot. The evidence indicated that Brown was in an SUV that sits higher up off the ground, which explained why the bullet that killed Brown traveled from left to right and slightly upward. When Brown shot back from the driver's seat of his vehicle, his shot would have gone downward, making it possible that the bullet fired by Brown grazed defendant's left cheek before becoming embedded in defendant's throat. Indeed, only one bullet fragment was recovered from defendant's body at the hospital.

## II. GREAT WEIGHT OF THE EVIDENCE

We also reject defendant's argument that his convictions must be reversed because the evidence preponderates so heavily against the jury's verdicts that it would be a miscarriage of justice to allow the verdicts to stand. A defendant is required to move for a new trial in the lower court to preserve a claim that his conviction is against the great weight of the evidence. *People v Cameron*, 291 Mich App 599, 617-618; 806 NW2d 371 (2011). Because defendant did not move for a new trial below, our review of this issue is limited to plain error affecting defendant's substantial rights. *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003).

In evaluating whether a verdict is against the great weight of the evidence, the question is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998); *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). Defendant does not challenge any of the elements of the various offenses, other than his identification. As discussed previously, sufficient circumstantial evidence supports defendant's identity as the perpetrator of the crimes. Considering Bracey's identification of defendant in the photographs from the gas station video as the person in possession of the stolen Charger shortly after Foy was carjacked, and that defendant was wearing clothing that matched Foy's description of the carjacker, the evidence does not preponderate so heavily against the jury's verdict for the Foy carjacking charge that it would be a miscarriage of justice to allow the verdict to stand.

Likewise, considering the evidence that defendant left the Charger at the gas station after it would not start, that he then began walking toward the location where Brown was shot, that Brown shot his assailant, that the police found defendant with a gunshot wound shortly after Brown was shot and within half a mile from where Brown had been shot, and that a bullet fragment removed from defendant was consistent with the caliber of bullet that Brown's weapon would have used, the evidence does not preponderate so heavily against the jury's verdicts for the Brown carjacking and murder charges that it would be a miscarriage of justice to allow the verdicts to stand.

Contrary to what defendant suggests, conflicting testimony and questions regarding the credibility of witnesses are not sufficient grounds for granting a new trial. *Lemmon*, 456 Mich at 643. This Court defers to the jury's determination of credibility "unless it can be said that directly contradictory testimony was so far impeached that it 'was deprived of all probative value or that the jury could not believe it,' or contradicted indisputable physical facts or defied physical realities[.]" *Id*. at 645-646 (citation omitted). That is not the case here. The jury was aware that neither victim identified defendant, that there were no other eyewitnesses, and that there was no fingerprint or DNA evidence linking defendant to the crimes. Again, it was up to the jury to assess the weight and reliability of the circumstantial identification evidence in light of the factors explored by the defense. *Id*. at 643-644. The jury's verdict is not against the great weight of the evidence.

## III. LAY OPINION TESTIMONY

Defendant next argues that Bracey improperly invaded the province of the jury when she offered her opinion that defendant was the person depicted in the still photograph from the gas

station surveillance video. Because defendant did not object to this testimony below, this issue is unpreserved. We review this unpreserved claim of error for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

MRE 701 permits a lay witness to provide testimony in the form of an opinion if the opinion is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." But " 'a witness cannot express an opinion on the defendant's guilt or innocence of the charged offense.' " *People v Fomby*, 300 Mich App 46, 53; 831 NW2d 887 (2013) (citation omitted). For this reason, if a witness is in no better position than the jury to identify a person in a video or still photograph, the witness's testimony identifying a defendant as the individual depicted is generally inadmissible as an invasion of the province of the jury. *Id.* at 52-53. Conversely, if a witness is in a better position than the jury to identify a person depicted in a video or photograph, the lay opinion testimony does not invade the province of the jury. *Id.*; see also *United States v LaPierre*, 998 F2d 1460, 1465 (CA 9, 1993). As this Court observed in *Fomby*, the *LaPierre* Court offered two illustrations of when a lay witness may identify a defendant in a video or photograph at trial without invading the province of the jury. The *LaPierre* Court explained:

> Our cases upholding the use of testimony of this type have been limited to two types. The first type is those in which *the witness has had substantial and sustained contact with the person in the photograph*. The second type is those in which the defendant's appearance in the photograph is different from his appearance before the jury and the witness is familiar with the defendant as he appears in the photograph. [*LaPierre*, 998 F2d at 1465 (citations omitted; emphasis added).]

The "common thread" binding these types of cases is that "there is reason to believe that the witness is more likely to identify correctly the person than is the jury." *LaPierre*, 998 F2d at 1465. See also *Fomby*, 300 Mich App at 52.

The evidence showed that Bracey was substantially familiar with defendant. Bracey testified that as of September 2014, she had known defendant for 2-1/2 years, had been in a relationship with him, and had seen him on a consistent basis. In fact, Bracey was the person who defendant chose to call for assistance after he was shot. Bracey acknowledged that the still photograph was not that clear and was taken from a distance, but she was still able to identify defendant with certainty based on her substantial contact with him. Given her familiarly with defendant, Bracey was in a better position than the jury to determine whether defendant was the person depicted in the still photograph. Therefore, Bracey's testimony did not invade the province of the jury, and her lay opinion testimony, which was rationally based on her perception of the photographs and was helpful to the jury's determination of a material fact at issue (identity), was admissible under MRE 701. Therefore, defendant cannot establish plain error.

## IV. EVIDENCE THAT CARL SHIVERS THREATENED TO KILL BROWN

Defendant raises two claims involving the failure to present evidence that Brown's daughter overheard her stepfather, Carlton Shivers, threaten to kill Brown during a conversation between Shivers and Brown's former wife. He argues that defense counsel was ineffective for

failing to present this evidence, and that it was misconduct for the prosecutor to not present this evidence. We disagree.

## A. EFFECTIVE ASSISTANCE

Because defendant did not raise an ineffective assistance of counsel claim in the trial court, our review of this issue is limited to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*. "A defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

Decisions about what arguments to make and what evidence to present are matters of trial strategy, *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999), and "this Court will not second-guess defense counsel's judgment on matters of trial strategy." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011). Defendant relies on a police report in which Brown's daughter reported overhearing Shivers state his intention to kill Brown to establish the factual predicate for his claim that there was valuable evidence that Shivers shot Brown. The same police report, however, also discloses that a police sergeant directly asked Brown if Shivers shot him and "*he stated no*" (Emphasis added.) Moreover, Brown's daughter overheard Shivers's threatening statement while she was listening in on a conversation between Shivers and her mother. Because information in the record indicates that Brown knew Shivers and expressly stated that Shivers did not shoot Brown, that the testimony would have been hearsay because it involved Shivers's out-of-court statement, offered to prove the truth of the matter asserted, MRE 801, and defendant has not offered any other evidence to support a theory that Shivers was the shooter, defense counsel's decision to forego presenting this evidence was not objectively unreasonable. Accordingly, defendant has not overcome the strong presumption that defense counsel provided constitutionally effective assistance in this regard.

## B. THE PROSECUTOR'S CONDUCT

In a related argument, defendant complains that the prosecutor violated a duty by not introducing evidence of Shivers's death threat at defendant's trial. Because defendant did not argue below that the prosecutor engaged in misconduct by failing to present this evidence at trial, this issue is unpreserved and is reviewed for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763. Defendant does not cite any legal authority to support his position that the prosecution has an affirmative duty to present potentially exculpatory evidence at trial. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Regardless, defendant's argument confuses a prosecutor's duty to disclose evidence with a duty to present that evidence at trial. The prosecution does not have a duty to introduce allegedly exculpatory evidence at trial, only to make it available to the defendant. See *People v*

*Lester*, 232 Mich App 262, 278-279; 591 NW2d 267 (1998), overruled in part on other grounds in *People v Chenault*, 495 Mich 142; 845 NW2d 731 (2014). Defendant does not contend that the prosecution failed to disclose the evidence of Shivers's threatening statement, or that he was unaware of that statement. Furthermore, there is no requirement that the prosecution negate every theory consistent with a defendant's innocence. *Nowack*, 462 Mich at 400. Thus, there is no basis for concluding that the prosecutor engaged in misconduct by failing to present the evidence of Shivers's threat.

Affirmed.


/s/ Michael J. Riordan
/s/ Karen M. Fort Hood
/s/ Deborah A. Servitto