*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DUANE PETERSON,

        Defendant-Appellant.

UNPUBLISHED
February 4, 2021

No. 348923
Wayne Circuit Court
LC No. 18-006278-01-FC

Before: FORT HOOD, P.J., and CAVANAGH and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of three counts of assault with intent to commit murder, MCL 750.83, carrying a concealed weapon (CCW), MCL 750.227, felon in possession of a firearm, MCL 750.224f(1), and four counts of possession of a firearm during the commission of a felony, second offense, MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 18 years and 9 months to 40 years for each assault conviction, 1 to 10 years for the CCW conviction, and 3 to 10 years for the felon-in-possession conviction. Those sentences are to be served consecutively to four different terms of imprisonment for each of the felony-firearm convictions; each felony firearm sentence is of five-years duration, and each felony firearm sentence is to be served concurrently with the other felony firearm sentences. Defendant's sentences are not at issue on appeal. Finding no reversible error, we affirm defendant's convictions.

## I. UNDERLYING FACTS

Defendant was convicted of assaulting John Thomas, Corey Hubbard, and Elliot Nelson outside a Detroit liquor store during the early morning hours of March 6, 2018. The prosecution's theory at trial was that defendant and another person, Demonte Foster, assaulted the victims after the victims saw defendant hit a woman in the store's parking lot.[1] There was evidence that during

---

[1] In recorded jail calls, defendant stated that cameras showed him in the store in an altercation with a girl.

defendant's altercation with the woman, Thomas stopped his car, in which all three of the victims were riding, at a traffic light in front of the store; Hubbard was in the front passenger seat and Nelson sat behind Thomas. In an apparent reaction to seeing the occupants of the car watch as defendant struck the woman, Foster stated, "This ain't no show," pulled a gun from his waistband, approached Thomas's car, and struck Hubbard in the face with the gun. As Thomas drove away, defendant and Foster both fired several shots at the car and one bullet struck Nelson in the back. None of the victims were able to identify defendant in a photo array as one of the shooters, but they identified two individuals recorded on the store's interior surveillance camera as the two men who shot at them. Later, Angie Brown, who had known defendant for more than 20 years, identified defendant in the video footage from the interior surveillance camera. Brown was not at the store on the night of the shooting, but had mentioned defendant's street name to the police in relation to an unrelated matter. The defense theory at trial was that defendant was misidentified as one of the shooters, and that Brown's identification testimony was not credible because she had animosity towards defendant.

## II. MOTION FOR MISTRIAL

Defendant argues that the trial court erred by denying his motion for a mistrial after the prosecutor elicited testimony from Brown that defendant "shot up our house a couple years ago." The trial court sustained defense counsel's objection to Brown's response and instructed the jury: "[D]isregard that last portion of the testimony related to someone shooting up a house. That hasn't been substantiated at all. Disregard that completely, okay." The trial court subsequently denied defendant's motion for a mistrial related to this testimony. We find no error.

### A. STANDARD OF REVIEW

We review a trial court's denial of a motion for a mistrial for an abuse of discretion. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). "This Court will find an abuse of discretion if the trial court chose an outcome that is outside the range of principled outcomes." *Id*. Furthermore, "[a] trial court should grant a mistrial only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *Id.* (quotation marks and citation omitted). Stated differently, a "mistrial should be granted only where the error complained of is so egregious that the prejudicial effect can be removed in no other way." *People v Gonzales*, 193 Mich App 263, 266; 483 NW2d 458 (1992).

### B. ANALYSIS

As an initial matter, we note that, while it may have been better for the prosecutor to have avoided asking Brown an opened-ended question about why she did not like defendant, the record does not reflect that the prosecutor knew what the answer would be, and therefore does not establish that she intended to draw out the prejudicial testimony, as defendant claims. Defendant does not explain why the record compels imputing misconduct to the prosecutor, given that there is nothing to support the suggestion that the prosecutor knew about the prior shooting incident. In support of his claim that the prosecutor knew that the shooting response was probable, defendant relies on comments Brown made about other incidents involving her nephew that she possibly could have mentioned to the prosecutor in preparation of the case for trial. But defendant provides no support for his claim that Brown mentioned a shooting at any point before trial. Thus, there is

-2-

nothing in the record to support defendant's assertion that the prosecutor sought to elicit improper testimony.[2]

The propriety of the prosecutor's opened-ended question aside, the issue is whether Brown's response that defendant "shot up our house a couple years ago" was "so egregious" that a mistrial was required. See *id*. Defendant immediately objected to the response and the trial court sustained the objection. The court also instructed the jury to disregard Brown's testimony "related to someone shooting up a house" and stated that Brown's accusation against defendant "hasn't been substantiated at all." Curative instructions can alleviate possible prejudice from isolated, improper comments such that a mistrial is not required. *People v Waclawski*, 286 Mich App 634, 709-710; 780 NW2d 321 (2009). In addition to the curative instructions that promptly and specifically addressed the objectionable testimony, the trial court also instructed the jury that it was not to consider any excluded evidence or stricken testimony; that the jury was to decide the case based only on the properly admitted evidence; and that the jury was to follow the court's instructions. Juries are presumed to have followed their instructions. *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011). After the objection and the curative instruction, the objectionable testimony was never referred to again. Defendant has not presented any basis for overcoming the presumption that the instruction cured any error, or for concluding that the jury did not or could not follow the trial court's instructions. Accordingly, the trial court did not abuse its discretion by denying the motion for mistrial.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Related to his argument that the trial court erred by denying a motion for mistrial based on Brown's testimony, defendant additionally argues that his trial counsel was ineffective for failing to renew the motion for a mistrial after a detective testified that he knew defendant "[f]rom previous ongoing investigations," which, according to defendant, compounded the prejudicial effect of Brown's improper testimony. Again, we disagree.

### A. STANDARD OF REVIEW

Because defendant failed to raise his ineffective-assistance claim in the trial court in connection with a motion for a new trial or to request an evidentiary hearing, "our review is limited to the facts on the record." *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). "A claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008).

---

[2] While we thus assume that counsel acted out of a lack of experience, given that she twice opened the door to irrelevant and prejudicial testimony in this trial, she would be well-advised to cease the practice of asking open-ended questions in instances in which she lacks a reasonable basis for assuming that the answer would be admissible.

## B. ANALYSIS

To demonstrate ineffective assistance of counsel, defendant must show that his attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance prejudiced defendant. *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "A defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Nix*, 301 Mich App at 207.

Defendant has failed to establish that defense counsel's response to the detective's objectionable testimony was unreasonable. Immediately after the detective's testimony, defense counsel asked to approach the bench. Because no record of the bench conference was made at trial and defendant failed to request an evidentiary hearing, whether defense counsel requested or discussed the possibility of a mistrial with the trial judge during the bench conference is unknown. As a result of defense counsel's immediate request for a bench conference, however, the trial judge instructed the jury to "disregard the Prosecutor's last question and the witness' [sic] last answer." In addition, as discussed earlier, the trial court later instructed the jury that it was not to consider any excluded evidence or testimony that was stricken, and that it was to follow the court's instructions. Again, juries are presumed to have followed their instructions, *Breidenbach*, 489 Mich at 13, and we are not persuaded that the testimony was so prejudicial that it could not be cured by the court's instructions. Indeed, because defendant was charged with being a felon in possession of a firearm, the jury learned—through a stipulation from the defense—that defendant was a convicted felon; that properly-introduced fact had the effect of negating much of the adverse implication that defendant asserts was injected into the trial by virtue of the detective being familiar with defendant through the detective's work on the "FBI Violent Gang Task Force." Accordingly, defense counsel cannot be deemed ineffective for failing to move for a mistrial because any such objection would have been futile. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."). Moreover, the detective's testimony merely provided information about his background, which included that he had been an officer for 20 years and his then-current assignment. The record does not support defendant's claim that the detective's answer, which provided basic background information, portrayed defendant as a violent gang member.[3] Thus, we reject this claim of error.

## IV. LAY OPINION TESTIMONY

Defendant next argues that Brown improperly invaded the province of the jury when she offered her opinion that defendant was the person depicted in the store's interior surveillance video. We disagree.

---

[3] Indeed, the detective did not testify that he was working with the gang task force during the investigation in this case. He simply testified about his assignment as of the date he testified.

## A. PRESERVATION AND STANDARD OF REVIEW

To preserve an issue regarding a trial court's evidentiary ruling, a defendant must raise that particular issue in the trial court and raise the same basis for objection on appeal. *People v Gaines*, 306 Mich App 289, 306; 856 NW2d 222 (2014). Defendant did not object to this testimony below, and thus this issue is unpreserved.

Unpreserved issues are reviewed for plain error. *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (quotation marks, citations, and brackets omitted).]

## B. ANALYSIS

MRE 701 permits a lay witness to provide testimony in the form of an opinion if the opinion is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." But " 'a witness cannot express an opinion on the defendant's guilt or innocence of the charged offense.' " *People v Fomby*, 300 Mich App 46, 53; 831 NW2d 887 (2013) (citation omitted). For this reason, if a witness is in no better position than the jury to identify a person in a video or still photograph, the witness's opinion testimony identifying a defendant as the individual depicted is generally inadmissible as an invasion of the province of the jury. *Id*. at 52-53. Conversely, if a witness is in a better position than the jury to identify a person depicted in a video or photograph, the lay opinion testimony does not invade the province of the jury. *Id*.; see also *United States v LaPierre*, 998 F2d 1460, 1465 (CA 9, 1993). As this Court observed in *Fomby*, 300 Mich App at 52-53, in *LaPierre* the Ninth Circuit offered two illustrations of when a lay witness may identify a defendant in a video or photograph at trial without invading the province of the jury. The court in *LaPierre* explained:

> Our cases upholding the use of testimony of this type have been limited to two types. The first type is those in which *the witness has had substantial and sustained contact with the person in the photograph*. The second type is those in which the defendant's appearance in the photograph is different from his appearance before the jury and the witness is familiar with the defendant as he appears in the photograph. [*LaPierre*, 998 F2d at 1465 (citations omitted; emphasis added).]

The "common thread" binding these types of cases is that "there is reason to believe that the witness is more likely to identify correctly the person than is the jury." *Id.*; see also *Fomby*, 300 Mich App at 52 (quoting *LaPierre*).

The evidence showed that Brown was substantially familiar with defendant. She testified that she had known defendant for approximately 20 years from their neighborhood, and he knew members of her family. She had been in the same places as defendant numerous times and defendant hung out with her cousins and had been to the house of Brown's family member. Specifically, Brown saw defendant at a family member's house during a social gathering and at that time she was within "arm's reach" of him. Furthermore, she last saw defendant in 2018, the same year that the offense occurred. Thus, Brown was in a superior position to identify defendant in the surveillance video because of her substantial contact with him over a period of many years. Consequently, Brown's testimony did not invade the province of the jury, and her lay opinion testimony, which was rationally based on her perception of the video and helpful to the jury's determination of a material fact at issue (identity), was admissible under MRE 701. See *Fomby*, 300 Mich App at 52-53; *LaPierre*, 998 F2d 1465. Thus, defendant cannot establish error, plain or otherwise.

## V. IDENTIFICATION EVIDENCE

Defendant argues that the trial court erred by denying his motion to suppress Brown's identification testimony. Again, we disagree.

## A. STANDARD OF REVIEW

"The trial court's decision to admit identification evidence will not be reversed unless it is clearly erroneous." *People v Harris*, 261 Mich App 44, 51; 680 NW2d 17 (2004). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*.

## B. ANALYSIS

Defendant argues that Brown's identification testimony was inadmissible because it was tainted by an unduly suggestive identification procedure in which the police used a single photographic identification procedure. Although identification procedures that are "unnecessarily suggestive and conducive to irreparable misidentification" deny a defendant due process, *People v Williams*, 244 Mich App 533, 542; 624 NW2d 575 (2001), the record fails to establish that any impermissible or unduly suggestive identification procedure occurred here. An improper suggestion may arise when a witness is shown only one person because the witness will be tempted to presume that the photograph is of the person suspected of committing the crime. *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998). But, as the trial court observed, this case did not involve a standard photographic identification where a witness to a crime was shown a photograph to determine if she could identify the suspect. Rather, Brown had no knowledge that a crime had been committed when she identified defendant. Brown had a prior relationship with defendant and the photograph was used only to help confirm the identity of the person in the photograph, i.e., to determine whether the person in the photo was the same person with whom Brown already was familiar. This procedure did not create a substantial likelihood of misidentification. See *People v*

*Woolfolk*, 304 Mich App 450, 457-458; 848 NW2d 169 (2014) ("The witness testified that he knew, and grew up with, the shooter. Under these circumstances, the use of a single photograph did not create a substantial likelihood of misidentification and, therefore, did not violate defendant's right to due process.").

Brown had mentioned defendant by nickname to the police in an unrelated matter. The police later showed Brown a five-second portion of the liquor store's interior surveillance video, without providing her any context for the video. Furthermore, the police did not mention defendant's name before Brown watched the video, and Brown immediately identified defendant with no police prompting. The detective then showed her a photograph to confirm that the person in the photograph was the person Brown had identified. Finally, as discussed earlier, Brown had known defendant for more than 20 years and was substantially familiar with him. Under these circumstances, the use of a single photograph was not unduly suggestive and did not create a substantial likelihood of misidentification.

Defendant also argues that there was no independent basis for Brown's in-court identification. "The need to establish an independent basis for an in-court identification arises [only] where the pretrial identification is tainted by improper procedure or is unduly suggestive." *People v Barclay*, 208 Mich App 670, 675; 528 NW2d 842 (1995). As previously discussed, there was no pretrial identification procedure that was unduly suggestive. Thus, whether there was an independent basis for Brown's challenged testimony is irrelevant. See *id*.

## VI. SUFFICIENCY OF THE EVIDENCE – CCW

Lastly, defendant argues that the prosecution failed to present sufficient evidence to support his conviction of CCW. We disagree.

## A. STANDARD OF REVIEW

A valid criminal conviction requires proof beyond a reasonable doubt of every element of every crime. *People v Jaffray*, 445 Mich 287, 296; 519 NW2d 108 (1994). A challenge to the sufficiency of the evidence to support a criminal conviction presents a question of law subject to review de novo. *People v Herndon*, 246 Mich App 371, 415; 633 NW2d 376 (2001). When reviewing the sufficiency of the evidence in a criminal case, a reviewing court must view the evidence of record in the light most favorable to the prosecution to determine whether a rational trier of fact could find that each element of the crime was proved beyond a reasonable doubt. *Id.* A reviewing court "must consider not whether there was any evidence to support the conviction but whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748, amended 441 Mich 1201 (1992) (citation and quotation marks omitted). Our "standard of review is deferential: a reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (citation omitted). "Conflicting evidence and disputed facts are to be resolved by the trier of fact. Minimal circumstantial evidence and reasonable inferences can sufficiently prove the defendant's state of mind, knowledge, or intent." *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019) (citations omitted). Similarly, "[c]ircumstantial evidence and reasonable inferences that arise from

such evidence can constitute satisfactory proof of the elements of the crime." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

## B. ANALYSIS

The elements of CCW require proof that the defendant (1) knowingly carried a weapon and (2) that the weapon was concealed on or about his person. See MCL 750.227; *People v Hernandez-Garcia*, 477 Mich 1039, 1040; 728 NW2d 406 (2007); M Crim JI 11.1. A firearm is concealed if there is "some kind of withdrawal from observation so as to hide or secrete an object." *People v Kincade*, 61 Mich App 498, 504; 233 NW2d 54 (1975).[4]

Defendant argues that the evidence was insufficient to sustain his CCW conviction because there was no eyewitness testimony that he had a gun on his person before entering the liquor store, "no visible bulges" on his body in the surveillance video, and someone could have passed him the gun when he was outside before the shooting. But defendant's arguments would require us to view the evidence in the light more favorable to him, not in the light most favorable to the prosecution as we are required to do. *Herndon*, 246 Mich App at 415. Furthermore, defendant's challenges, including the inferences which could permissibly be drawn from the evidence, are related to the weight and credibility of the evidence, which were issues for the jury to resolve. See *Kanaan*, 278 Mich App at 619 ("This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses."); *People v Scotts*, 80 Mich App 1, 9; 263 NW2d 272 (1977) ("[T]he credibility of witnesses is a matter of weight, not sufficiency. Determinations of credibility are made by the jury which heard the testimony and observed the witnesses, and this Court will not substitute its judgment on this issue.").

The jury observed the surveillance video footage, heard the testimony, and was free to accept or reject the theory of either party in light of the evidence presented at trial. As discussed, we must construe the evidence in the light most favorable to the prosecution, *Herndon*, 246 Mich App at 415. Additionally, only minimal circumstantial evidence and reasonable inferences that can be made from that evidence are required to establish the sufficiency of the evidence. See *Miller*, 326 Mich App at 735. Contrary to what defendant suggests, it was not necessary for an eyewitness to have testified that defendant possessed a gun on his person before entering the store or that there was a visible bulge in his clothing. The evidence established that defendant was clearly visible in the liquor store immediately before the shooting and he did not appear to have a visible gun on his person at that time. Then, shortly thereafter, defendant had a gun and shot it at the victims. Taken together, these facts establish sufficient circumstantial evidence and the basis for reasonable inferences for a rational jury to determine, beyond a reasonable doubt, that defendant was concealing a gun when he was in the liquor store. Thus, the evidence was sufficient to support defendant's conviction of CCW, and we will not disturb the jury's verdict which reached that permissible conclusion.

---

[4] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority." *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012) (citation omitted).

## VII. CONCLUSION

For the reasons stated, we find that there was sufficient evidence for the jury to find defendant guilty beyond a reasonable doubt, and that his other claims regarding errors in his trial are without merit. We therefore affirm defendant's convictions.

/s/ Karen M. Fort Hood
/s/ Mark J. Cavanagh
/s/ Jonathan Tukel