*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JEROME JUNIOR WATSON,

Defendant-Appellant.

UNPUBLISHED
June 30, 2022

No. 353605
Wayne Circuit Court
LC No. 19-007471-01-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

JEROME JUNIOR WATSON,

Defendant-Appellee.

No. 356971
Wayne Circuit Court
LC No. 19-007471-01-FC

---

Before: LETICA, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his convictions, following a bench trial, of assault with intent to do great bodily harm, less than murder (AWIGBH), MCL 750.84(1)(a), and assault by strangulation, MCL 750.84(1)(b). The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to concurrent prison terms of 83 months to 15 years for each conviction. After defendant filed a motion for resentencing, the trial court vacated one of the assault convictions on double-jeopardy grounds and held that defendant was entitled to resentencing. This Court granted the prosecution's application for leave to appeal that decision. *People v Watson*, unpublished order of the Court of Appeals, entered July 28, 2021 (Docket No. 356971). We affirm defendant's convictions in Docket No. 353605, but reverse the trial court's order vacating one count of assault and ordering resentencing in Docket No. 356971, and remand to that court for further proceedings.

-1-

# I. FACTS

Defendant was convicted of assaulting CS in his Detroit home in the early morning hours of September 9, 2019. Before the offense, defendant and CS spoke to each other and discussed plans to develop a dating relationship. On September 8, 2019, CS took a bus to meet defendant. Defendant met CS at the bus stop and the two walked to defendant's house. Thereafter, they spent time together and had consensual sex before a later dispute led to a physical altercation. The prosecution's theory at trial was that defendant assaulted CS because defendant was upset that she would not have sex with him again. There was evidence that defendant punched, stomped, and strangled CS during the episode. Ultimately, CS left the house and was transported to a hospital where she spoke with the police and with a nurse examiner. After defendant was arrested, he gave a statement to the police in which he admitted that when CS tried to leave, he "snapped" and hit her four times with an open hand and pulled her hair.

At trial, defendant asserted that he acted in self-defense. Defendant claimed that as he and CS were arguing, CS picked up a bat, hit him in the leg, and tried to swing a crutch at him, and, fearing that he would be harmed, he defended himself by hitting CS in the face, tackling her, and holding her down. The trial court rejected defendant's self-defense claim and convicted him of AWIGBH and assault by strangulation, but acquitted him of additional charges of first-degree criminal sexual conduct, MCL 750.520b, torture, MCL 750.85, kidnapping, MCL 750.349, and felonious assault, MCL 750.82.

# II. DOCKET NO. 353605

## A. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the prosecution failed to present sufficient evidence to prove the requisite intent to sustain his convictions of AWIGBH and assault by strangulation, and failed to disprove beyond a reasonable doubt that he acted in lawful self-defense. We disagree. We review de novo a challenge to the sufficiency of the evidence. *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). When ascertaining whether sufficient evidence was presented at trial to support a conviction, we must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the [trier of fact's] verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

### 1. AWIGBH

The elements of AWIGBH are: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016) (quotation marks and citation omitted). Defendant argues only that the prosecution failed to prove beyond a reasonable doubt that he possessed the requisite intent. The intent to do great bodily harm less than murder is "an intent to do serious injury of an aggravated nature." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005) (quotation marks and citation omitted). "An actor's intent may be inferred

from all of the facts and circumstances, and because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v Fetterley*, 229 Mich App 511, 517-518; 583 NW2d 199 (1998) (citations omitted). A trier of fact may infer an intent to inflict great bodily harm from the actor's actions, including "the making of threats." *People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014). Although actual injury to the victim is not an element of the offense, "injuries suffered by the victim may also be indicative of a defendant's intent." *Id*.

Viewed in a light most favorable to the prosecution, there was sufficient evidence to establish that defendant acted with an intent to inflict great bodily harm. There was evidence that defendant and CS were engaged in a dispute, which escalated, and defendant admitted that he "snapped" and struck CS in her face with an open hand four times, pulled her hair, tackled her, and held her down. CS testified that defendant became upset because she refused his request for sex, and then punched her in the head "several time[s]," punched her in the mouth "several times," and "stomped" her in the stomach and head while wearing shoes. During the assault, defendant also threatened to "drop kick" CS and her baby. In addition, there was ample evidence, including photographic evidence and testimony from police officers and nurses, that CS suffered numerous injuries as a result of the assault. Considering the evidence that defendant struck CS multiple times during an argument and visibly injured her, a trier of fact could have rationally inferred that defendant acted with an intent to inflict great bodily harm.

In challenging the sufficiency of the evidence of intent, defendant asserts that there were "only two spots—not pools" of CS's blood at the crime scene, and that CS's injuries "were generally very small and the lip injury was the only injury that required stitches, and only two stitches at that." Thus, defendant essentially argues that CS's injuries were not serious enough to sustain the intent element for AWIGBH. This argument fails, however, because actual injury is not an element of the offense that must be proven by the prosecution, although a victim's injuries may be probative of a defendant's intent. *Stevens*, 306 Mich App at 629. Furthermore, defendant's challenge is related to the weight of the evidence rather than its sufficiency. See *People v Scotts*, 80 Mich App 1, 9; 263 NW2d 272 (1977). The same argument that defendant now raises on appeal was presented to the trial court during trial. Thus, the trial court was aware of this argument. This Court will not interfere with the trier of fact's determinations regarding weight of the evidence. *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). Applying this standard, there was sufficient evidence to enable the trier of fact to find beyond a reasonable doubt that defendant acted with the intent to inflict great bodily harm, and we will not disturb the trier of fact's determination.

2. ASSAULT BY STRANGULATION

A person is guilty of assault by strangulation if he (1) assaults another person, (2) by "intentionally impeding normal breathing or circulation of the blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person." MCL 750.84(1)(b) and (2). Defendant argues that the trial court's finding that he did not accidently put his hands on CS's neck "is not the same thing as intentionally trying to stop a person's air flow in their neck," and therefore, the court erred by concluding that the evidence was sufficient to prove that he intended to strangle or suffocate CS. We disagree.

There was evidence that during the incident, defendant put his hands around CS's neck, "squeezing really, really hard" to the point that CS believed that she was unconscious, and CS "was just breathing really, really heavy," and "felt weak." During a strangulation assessment by a sexual assault nurse examiner (SANE), CS reported that she was having "difficulty breathing, a raspy voice, coughing, trouble swallowing, painful swallowing, neck pain, nausea, vomiting, dizziness, headache, and loss of consciousness," which the SANE testified can be signs and symptoms of strangulation. In addition, even though "the outward signs of strangulation" are only seen in approximately half of strangulation cases, CS had "several abrasions noted throughout her neck," which were consistent with strangulation. This evidence, viewed in a light most favorable to the prosecution, was sufficient to enable a rational trier of fact to find that defendant intentionally impeded CS's breathing by applying pressure to her neck. MCL 750.84(2). While defendant admitted that he had his hands on CS's neck, he seeks to credit his testimony that he was only restraining CS and did not intend to strangle or hurt her. The credibility of defendant's testimony was for the trier of fact to determine, and this Court will not interfere with the trier of fact's determinations regarding credibility. *Unger*, 278 Mich App at 222. The evidence, viewed in a light most favorable to the prosecution, was sufficient to support defendant's conviction of assault by strangulation.

## 3. SELF-DEFENSE

Defendant also argues that the prosecution failed to disprove beyond a reasonable doubt that he acted in self-defense. At common law, self-defense is an affirmative defense that, if established, will justify otherwise punishable criminal conduct. *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010). The Self-Defense Act, MCL 780.971 *et seq.*, codified the circumstances in which a person may use self-defense. *People v Leffew*, ___ Mich ___, ___; ___ NW2d ___ (2022) (Docket Nos. 161797 & 161805); slip op at 12. As applicable to this case, which involves self-defense with nondeadly force, MCL 780.972(2) provides:

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual.

MCL 780.972(2) "removed the traditional common-law duty to retreat, so long as the individual engaging in self-defense or defense of others was not committing or had not committed a crime and had a legal right to be where they were when they used force." *People v Ogilvie*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 354355); slip op at 4 (quotation marks and citation omitted).

"Once a defendant satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution bears the burden of disproving the affirmative defense of self-defense beyond a reasonable doubt." *Dupree*, 486 Mich at 712. "In general, a defendant does not act in justifiable self-defense when he or she uses excessive force or when the defendant is the initial aggressor." *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013).

-4-

Defendant introduced the concept of self-defense at trial. Defendant testified that as he and CS were arguing, CS picked up a bat, hit him in the leg, and tried to swing a crutch at him, and, fearing that he would be harmed, he defended himself by hitting CS in the face, tackling her, and holding her down. During his police interview, defendant stated that he hit CS first without giving an indication that he believed that the use of that force was necessary to defend himself from CS. In particular, defendant stated that he had been drinking, and, when CS tried to leave, he "snapped" and hit her four times with an open hand and pulled her hair. In addressing these statements at trial, defendant explained that he slapped CS first because she "was hostile" as she came toward him with the bat and he was afraid of being hit.

In essence, defendant asks this Court to accept his version of the events presented at trial as fact. Although there was evidence that could support a self-defense claim, there was ample evidence to rebut it. CS testified that defendant became upset, struck her first—multiple times— and that, during the beating, she picked up an object in an effort "to stop him from hitting [her]." Defendant made statements that were also inconsistent with his claim of self-defense. A trier of fact could reasonably infer that his statement that he snapped and hit CS was consistent with CS's testimony that defendant became upset and hit her, thereby making defendant the initial aggressor. Furthermore, the trial court heard defendant's testimony placing into context why he stated that he hit CS first, and apparently rejected it. Conflicting evidence and factual disputes are matters for the trier of fact to resolve. *Miller*, 326 Mich App at 735. Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that defendant did not act in justifiable self-defense.

## B. HEARSAY

Next, defendant argues that he is entitled to a new trial because of the introduction of testimony describing CS's statements to a SANE, which defendant argues was inadmissible hearsay and improperly bolstered CS's credibility. We disagree. As defendant acknowledges, he did not object to the testimony that he now challenges on appeal, leaving this issue unpreserved. Accordingly, our review is limited to plain error affecting respondent's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

## 1. CS'S STATEMENTS TO ENGLE

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is inadmissible at trial unless there is a specific exception allowing its introduction. MRE 802. MRE 803(4) provides an exception for

> [s]tatements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.

The rationale supporting the admission of hearsay under MRE 803(4) is "(1) the self-interested motivation to speak the truth to treating physicians in order to receive proper medical

care, and (2) the reasonable necessity of the statement to the diagnosis and treatment of the patient." *People v Meeboer (After Remand)*, 439 Mich 310, 322; 484 NW2d 621 (1992). "Particularly in cases of sexual assault," "a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment." *People v Mahone*, 294 Mich App 208, 215; 816 NW2d 436 (2011). Further, identification of the perpetrator is necessary to adequate diagnosis and treatment. *Meeboer (After Remand)*, 439 Mich at 322. Additionally, an injury need not be readily apparent because in cases of sexual assault, "the injuries might be latent, such as contracting sexually transmitted diseases or psychological in nature and thus not necessarily physically manifested at all[.]" *Mahone*, 294 Mich App at 215.

The record supports that CS's statements to the SANE were reasonably necessary for diagnosis or treatment of CS, and thus subject to the hearsay exception in MRE 803(4). CS came to the hospital emergency room after being assaulted, including suspected sexual assault. The SANE explained that she took CS's medical history for medical treatment purposes. The SANE testified that she asked CS about the "assault history" to determine what type of examination to conduct and to determine what treatment or procedures might be necessary, explaining that the assault history "guides [the] entire medical forensic exam." The SANE described examining CS for physical injuries, and discussing a follow-up examination to evaluate if CS's injuries were healing appropriately and if CS needed any post-assault medical-related care. Although the examination was conducted after CS had been interviewed by the police, the record discloses that the purpose of the SANE's examination "was to evaluate and assess the patient, [her] injuries, and [her] needs post assault." The SANE testified that she had no affiliation with law enforcement, and her job as a SANE was not to determine if a crime occurred. Under these circumstances, CS's statements to the SANE during the sexual assault examination were reasonably necessary for her diagnosis or treatment. Accordingly, this hearsay evidence was admissible under MRE 803(4), and therefore, its introduction at trial was not plain error.

2. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that trial counsel was ineffective by failing to object to the hearsay testimony. Because defendant failed to raise this ineffective-assistance claim in the trial court in a motion for a new trial or request for an evidentiary hearing, our review is limited to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id.*

For the reasons previously discussed, the SANE's testimony regarding the statements CS made during the sexual assault examination was admissible under MRE 803(4). Therefore, trial counsel's failure to object was not objectively unreasonable. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Consequently, defendant cannot establish a claim of ineffective assistance of counsel on this basis.

The prosecution's sole claim on appeal is that the trial court erred by vacating one of defendant's convictions under MCL 750.84 on double-jeopardy grounds.  We agree.  "A double jeopardy challenge presents a question of constitutional law reviewed de novo on appeal." *People v Ackah-Essien*, 311 Mich App 13, 30; 874 NW2d 172 (2015).

The United States and Michigan Constitutions both protect against double jeopardy, which includes protection against multiple punishments for the same offense.[1]  US Const, Am V; Const 1963, art 1, § 15.  "The multiple punishments strand of double jeopardy is designed to ensure that courts confine their sentences to the limits established by the Legislature and therefore acts as a restraint on the prosecutor and the Courts." *People v Miller*, 498 Mich 13, 17-18; 869 NW2d 204 (2015) (quotation marks and citation omitted).

MCL 750.84 provides:

> (1)   A person who does either of the following is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $5,000.00, or both:

> (a)  Assaults another person with intent to do great bodily harm, less than the crime of murder.

> (b)  Assaults another person by strangulation or suffocation.

> *  *  *

> (3)   This section does not prohibit a person from being charged with, convicted of, or punished for any other violation of law arising out of the same conduct as the violation of this section.

The trial court found defendant guilty of two counts of assault under this statute, one under a theory that he committed AWIGBH, MCL 750.84(1)(a), and one under a theory that he committed assault by strangulation, MCL 750.84(1)(b).

In *People v Barber (On Remand)*, 332 Mich App 707, 709; 958 NW2d 288 (2020), this Court held that "double jeopardy precludes [a] defendant's conviction of both assault by strangulation and AWIGBH arising from a single incident of assault."  In that case, a Michigan State Police (MSP) trooper attempted to effectuate a seizure of the defendant, and the defendant's brother "wrapped his arm around the trooper's neck, choked him, violently pulled him back several

---

[1]  This prohibition includes "three related protections:  (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." *People v Smith*, 478 Mich 292, 299; 733 NW2d 351 (2007) (quotation marks and citation omitted).  Only the third protection—the multiple punishments strand—is at issue here.

feet, and yelled at [the defendant] to run." *Id.* at 711. This Court originally affirmed the defendant's convictions of both AWIGBH and assault by strangulation under an aiding and abetting theory, *People v Barber*, unpublished per curiam opinion of the Court of Appeals, issued November 27, 2018 (Docket No. 339452), but our Supreme Court vacated that part of the opinion and remanded the case to this Court to "address the defendant's argument that the Legislature did not intend for a single act to result in convictions for both" AWIGBH and assault by strangulation, *People v Barber*, 505 Mich 937 (2019). On remand, as noted, this Court resolved that issue in favor of the defendant. *Barber (On Remand)*, 332 Mich App at 709.

In this case, the trial court found that defendant was guilty of AWIGBH with the following reasoning:

Um, with regard to the assault with intent to do great bodily harm, uh, the photographs which have been admitted into evidence in the Wayne County SAFE reports certainly or Exhibits 27-67 establish that [CS] had more and [sic] 50 injuries. And those were undoubtedly in this court's opinion based upon the evidence that's been introduced, uh, were caused by Mr. Watson.

Mr. Watson admitted during his interrogation that he just snapped and struck [CS] even though she had not struck him.

I believe the evidence establishes not only he had the ability to injure, injure [CS], but that he did in fact injure her, uh, with his hands.

The next question is whether he intended to do great bodily harm. . . . This element I believe is proved beyond a reasonable doubt because the evidence establish [sic] that [CS] was spitting or drip, dripping blood, uh, after she was, uh, beaten by the defendant and left the house.

Uh, certainly . . . the evidence establishes beyond a reasonable doubt that, uh, the blood on the driveway was [CS's] and whether she spat the blood because of the laceration to the lip or because of the injury to the eye, uh, there certainly was a, a blood stain, uh, caused by the injuries inflicted, uh, by Mr. Watson.

And, again, there were more than 50 injuries suffered by, um, [CS] including the laceration above her eye and the laceration of her lip that required, uh, stitches. . . .

Additionally, [the SANE] testified the injuries to [CS's] neck were consistent with strangulation. . . . [I]t indicates that [CS] had difficulty breathing, a raspy voice, coughing, trouble swallowing, was painful to swallow . . . had a headache and loss of consciousness and her face was rather flush. . . . And certainly the photographs of the neck, uh, the injures to [CS's] neck as well as the testimony from [CS] that there were, uh, the defendant had one, if not two, hands around his -- her neck and that she was having difficulty breathing and perhaps even lost consciousness, uh, collectively, uh, establish that there was an intent, uh, to do, uh, great bodily harm, and that I find the defendant, uh, guilty of that charge.

-8-

Next, with regard to assault by strangulation, the trial court reasoned as follows:

> [T]he facts clearly establish the defendant grabbed [CS] around the neck at least one if not two hands meaning that that occurred while the defendant was in the process of beating [CS] with his fist and causing physical injuries. Uh, because the strangulation occurred while the defendant was severely beating [CS] I think it's been established beyond a reasonable doubt the placement of the defendant's hand on [CS's] neck was not an accident.
>
> Uh, additionally, uh, there were more, there was more than ample evidence to establish that the battery was committed by strangulation . . . .

We agree with the prosecution that the trial court misapplied *Barber (On Remand)*. In that case, the defendant was convicted of both AWIGBH and assault by strangulation for the singular act of choking the MSP trooper. See *Barber (On Remand)*, 332 Mich App at 711-712. And our Supreme Court specifically directed this Court to address whether a "single act" may constitute the basis for convictions of both AWIGBH and assault by strangulation. *Barber*, 505 Mich 937. Thus, while *Barber (On Remand)* stated that two such convictions cannot arise from "a single incident of assault," it more precisely stands for the proposition that two such convictions cannot arise from a "single act" of assault.[2]

Here, in contrast, there were at least two acts of assault. One act occurred when defendant repeatedly struck CS in the face with his fist and caused multiple injuries, including bleeding. The second act occurred when defendant strangled CS. Specifically, CS testified that defendant punched her in the head "several time[s]," punched her in the mouth "several times," and threatened to "drop kick" her and the baby. Later, CS ran up the stairs, and defendant "dragged [her] down the stairs" and "start[ed] choking" her with his hand. CS "felt like that he was about to kill [her] or something," and she "was just breathing really, really heavy" and "felt weak."

The trial court conceptually distinguished between these two acts of assault when rendering its findings—first, when it explained that the intent for the AWIGBH conviction was supported by the evidence that defendant caused CS to bleed from the eye and lip and "[a]dditionally" the evidence that defendant strangled CS, and second, when it explained that "the strangulation occurred while the defendant was severely beating [CS]." Simply put, the trial court understood

---

[2] At oral argument, defendant stated that *Miller* and *Barber (On Remand)* stand for the proposition that "the Legislature did not intend multiple punishments in the same trial" for multiple violations of the respective statutes at issue in those cases. We disagree. In *Miller*, the defendant was convicted of operating while intoxicated (OWI), MCL 257.625(1), and OWI-injury, MCL 257.625(5), for a single car accident that injured his passenger. *Miller*, 498 Mich at 15-16. In *Barber (On Remand)*, the defendant was convicted of AWIGBH and assault by strangulation for a single choking incident. See *Barber (On Remand)*, 332 Mich App at 711-712. Both of these cases involved a single act that constituted a violation of two distinct criminal provisions. There is nothing in either of these cases to undermine the longstanding principle that a defendant may receive multiple punishments for committing "separate and distinct" crimes. *People v Colon*, 250 Mich App 59, 63-64; 644 NW2d 790 (2002).

that defendant engaged in two acts of criminal assault—physical beating and strangulation. These findings were supported by the evidence, and double jeopardy does not preclude two separate convictions for both AWIGBH and assault by strangulation because defendant committed two independent acts. First, there was the beating in the basement. Second, there was the strangulation after the victim fled up the basement stairs and defendant then dragged her back down. See *People v Colon*, 250 Mich App 59, 63-64; 644 NW2d 790 (2002) (concluding that the defendant's multiple assault convictions did not violate double jeopardy because "the incidents composing these crimes were separate and distinct").

We acknowledge that the trial court found that the act of strangulation was evidence that supported a finding that defendant had the intent to commit great bodily harm for the purposes of the AWIGBH conviction. In other words, the evidence suggested, and the trial court apparently reasoned, that the act of strangulation occurred while the overall assault that constituted AWIGBH was occurring. This, however, also does not preclude a conclusion that defendant committed two independent violations of MCL 750.84. A defendant may commit two closely related, independent offenses during a single criminal transaction. Compare *People v Ryan*, 295 Mich App 388, 404; 819 NW2d 55 (2012) (explaining that "in the case at bar, while the two volitional acts of sexual penetration constituted distinct offenses, they were part of the same transaction"). Thus, while defendant committed an assault by strangulation while he was committing AWIGBH, this overlap does not mean that defendant may only be found guilty of one violation of MCL 750.84 for the purposes of double jeopardy. Therefore, the trial court erred by vacating one of the assault convictions, and we reverse its judgment in this regard.

## IV. CONCLUSION

We affirm in Docket No. 353605, reverse in Docket No. 356971, and remand to that court for further proceedings consistent with our opinion. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan

-10-